WILLIAMS *v.* FIEDLAR

1. APPEAL AND ERROR—VERDICT—MISCARRIAGE OF JUSTICE.
   The Court of Appeals will not substitute its judgment for that of a jury, unless after a careful review of the record, they are convinced that there has been a miscarriage of justice.

2. EVIDENCE—PHOTOGRAPHS—DISCRETION.
   The introduction of photographs into evidence is a matter within the discretion of the trial court.

3. EVIDENCE—PHOTOGRAPHS—ADMISSIBILITY—AUTOMOBILES.
   Photographs were properly admitted to be given whatever weight the jury thought due, and the photographer need not authenticate the photos, where the plaintiff, as a witness, admitted that the photographs were a fair representation of damage done to his own automobile in an accident.

4. APPEAL AND ERROR—INSTRUCTIONS TO JURY—REQUEST OF CHARGE —PRESERVING QUESTION.
   Error alleged in not instructing the jury as to weight which could be given to photographs cannot be considered, when the record shows that the party asserting error failed to make a timely request for an instruction on this matter.

5. EVIDENCE—EXPERT WITNESSES—QUESTIONS—RELEVANCY.
   Sustaining objection to question asked plaintiff's medical expert, "How can those degenerative changes come about?" was not error where there was no claim or testimony that plaintiff had been subjected to any degenerative process.

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 820 *et seq.*
[2] 29 Am Jur 2d, Evidence §§ 785–788.
[3] 29 Am Jur 2d, Evidence § 788.
[4] 5 Am Jur 2d, Appeal and Error § 623.
[5] 31 Am Jur 2d, Expert and Opinion Evidence § 103 *et seq.*
[6] 31 Am Jur 2d, Expert and Opinion Evidence §§ 31, 32.
[7] 31 Am Jur 2d, Expert and Opinion Evidence § 183.
[8] 53 Am Jur, Witnesses § 737 *et seq.*
    8 Am Jur 2d, Automobiles and Highway Traffic § 940 *et seq.*

6. WITNESSES—EXPERT WITNESS—QUALIFICATIONS.

The trial court did not abuse its discretion in allowing the
defense to cross-examine a medical doctor as to his quali-
fications, where the doctor testified as an expert for the plain-
tiff, and the plaintiff spent considerable time establishing his
expertise.

7. WITNESSES—EXPERT WITNESS—MEDICAL DOCTOR—CHALLENGE.

Defendant is obliged to challenge, by competent proofs, the testi-
mony of a medical doctor witness or be bound by his affirma-
tive statements, where, as plaintiff's witness, the medical
doctor presents testimony which, if believed by the jury, would
establish the plaintiff's case.

8. WITNESSES—IMPEACHMENT—DRIVING      RECORD—ADMISSIBILITY—
COURT RULES.

Cross-examination of plaintiff in automobile negligence case
about his record of convictions for prior driving violations
was proper where the evidence was admitted only for the
purpose of testing plaintiff's credibility under court rule (GCR
1963, 607).

Appeal from Oakland, Clark J. Adams, J. Sub-
mitted Division 2 November 14, 1969, at Lansing.
(Docket No. 5,903.) Decided February 26, 1970.
Leave to appeal granted September 22, 1970. 384
Mich 753.

Complaint by Francis Thomas Williams against
Myron W. Fiedlar and Larry Fiedlar for injuries
suffered in an automobile accident. Judgment for
defendant. Plaintiff appeals. Affirmed.

*Robert L. Coopes,* for plaintiff.

*Hartman, Beier, Howlett & McConnell (George
A. Googasian,* of counsel), for defendants.

Before: QUINN, P. J., and T. M. BURNS and DAN-
HOF, JJ.

T. M. BURNS, J. This civil action arises out of an
automobile accident which occurred on a snowy night

in February, 1963, at the intersection of Stanford and Eleven Mile Road in Oakland County.

Plaintiff testified that he was going east on Eleven Mile Road, at a speed that ranged from 15 to 25 miles per hour, behind an old black Buick. The plaintiff testified that this Buick was weaving from lane to lane in a rather erratic and unsafe manner. The plaintiff further testified that as he approached the Stanford intersection, the Buick was in the lane nearest the curb and seemed to slow down.

The plaintiff testified that he then decided to pass the Buick, but as he was about to, the Buick speeded up and came over into the center lane. The Buick and the plaintiff then proceeded the remaining half block to the intersection where according to the plaintiff's testimony the Buick, without giving any indication, stopped suddenly.

The plaintiff was somehow able to stop his car short of a collision with the Buick; but almost immediately after his sudden stop, his car was hit from the rear by one driven by the defendant.

The defendant, like the plaintiff, was traveling east on Eleven Mile. The defendant testified that although he was traveling at around 20 miles per hour and about 2-1/2 car lengths behind plaintiff, he never saw the Buick.

Since he was on a through street and as there was no traffic control device at the intersection, the defendant was surprised when the plaintiff suddenly stopped. The defendant testified that although his car was in good working order, he was unable to stop in time to avoid plaintiff's car.

The plaintiff says that when his car was struck, it went forward into the Buick and that the Buick then left the scene.

Although the passenger in his car was apparently unhurt by the collision, the plaintiff, who had sus-

tained injuries in a previous rear-end collision, was apparently hurt.

At the conclusion of the trial below, a verdict of no cause of action was returned by the jury on January 30, 1968. An order for judgment on the verdict was filed on February 9, 1968. Plaintiff then filed a motion for new trial, which was denied by an order entered on June 6, 1968.

On appeal, the plaintiff asserts that the jury verdict of no cause of action is against the great and overwhelming weight of the evidence. He further asserts that the trial court committed reversible error in allowing certain photographs to be admitted into evidence; in sustaining an objection to the question "How can those degenerative changes come about?", even though there was no evidence of degeneration; in allowing cross-examination of plaintiff's witness, Dr. Park, as to his qualifications, competence, and credibility; and in allowing cross-examination of the plaintiff as to his record of convictions for prior driving violations.

*Was the jury verdict of no cause for action against the great and overwhelming weight of the evidence?*

We find that the jury verdict of no cause was not against the weight of the evidence. Although plaintiff had the statutory presumptions which arose from MCLA § 257.402 (Stat Ann 1968 Rev § 9.2102) and MCLA § 257.627 (Stat Ann 1968 Rev § 9.2327) in his favor, defendant, in his plea of "sudden emergency" pled an exception to the general rule established thereby.

The plaintiff's only explanation for stopping suddenly in front of the defendant relies on "the old Buick". The defendant asserts that he never saw such a car.

The situation in this regard is much like the one which faced the court in *Humphrey* v. *Swan* (1968), 14 Mich App 683, 685, 686:

"If the jury chose to believe Swan's testimony in preference to that of Tasco and Humphrey, it could have found that the Tasco automobile did start up when the light turned green and stopped suddenly without any reason for a sudden stop, thereby confronting Swan with a sudden emergency. If the jury so found it would have been justified in concluding both that Tasco was contributorily negligent and that Swan was not causally negligent. See *McKinney* v. *Anderson* (1964), 373 Mich 414, where the Michigan Supreme Court held that since the jury in that case had found the collision occurred in the midst of a sudden emergency not of the defendant's making neither the rear-end collision statute (MCLA § 257.402 [Stat Ann 1960 Rev § 9.2102]) nor the assured-clear-distance-ahead statute (MCLA § 257.627 [Stat Ann 1960 Rev § 9.2327]) entitled the plaintiff to a directed verdict even though defendant admitted he was going too fast to avoid colliding with the rear end of plaintiff's vehicle. (Footnotes omitted.)

The Court in *Humphrey* went on to point out on p 686 that:

"[a]ppellate courts traditionally exercise a broader review of judges' decisions than of jury verdicts.

" 'A jury's verdict-view of facts is entitled to an even higher degree of appellate respect than is a judge's verdict-view of the same facts, learned though the judge may be in law. For reasons known well to students of American history, a finding of fact by "the twelvers" is more apt to be sound than that of one man.' *Schneider* v. *Pomerville* (1957), 348 Mich 49, 54." (Footnotes omitted.)

Consequently, the appellate courts of this state will not substitute their judgment for that of a

jury, unless the appellate court after a careful review of the record is convinced that there has been a miscarriage of justice. *Middleton* v. *Smigielski* (1962), 366 Mich 302.

Having reviewed the record, we do not find "* * * that the verdict is manifestly against the weight of the evidence." *Smigielski, supra,* at p 306. There being no manifest injustice, that is to say no miscarriage of justice, we conclude that the trial court did not err in refusing to grant a new trial on that ground. But see *Vander Laan* v. *Miedema* (1970) 22 Mich App 170.

*Did the trial court commit reversible error by admitting into evidence photographs which had not been submitted at pre-trial, but which were authenticated by the plaintiff as reasonably accurate pictures of the damage shown?*

The plaintiff claims that the admittance of these photographs at trial was an unfair surprise because they were not produced at pre-trial under GCR 1963, 301(2).

The trial judge was unconvinced by the plaintiff's complaints of unfair surprise. He said:

"*The Court:* I think we can move along. The court can make a ruling on this matter forthwith. I call your attention first to the fact that this case was started January 19, 1965, and pre-trialed on July 8, 1965; has been pending since that time with apparent adjournments, some stipulated to and some apparently for other reasons, and that you, Mr. Taylor, came into this case on Tuesday of this week, so your background of information in regard to this case is not too good.

"I point out further that this accident happened almost five years ago, and people's memories fre-

quently fail over a period of five years, but that photographs change very little.

"It would seem to the court that a photograph taken at that time, which your client says is a fair representation, not a complete representation, but a fair representation, might have more probative value in the record and to the jury than would your client's own memory, dulled by five years' lapse of time.

"There is no indication in the file that there would be surprise, if you look at the pre-trial statement. The defendant back in '65 said the exhibits were not known at that time. Since that time there has been measurable discovery had and so it seems to me that it comes as a sort of an illogical position on your part to say now at this late date that you are surprised.

"I find nothing in the record to indicate that fact and your motion to quash is denied. Mr. Willie (*court officer*) will you call the jury back?"

The admission of these photographs was within the discretion of the trial court, and we do not find that he abused that discretion. *Eastman* v. *Ann Arbor R. Co.* (1966), 4 Mich App 540, 545. As the trial judge noted, the plaintiff, under examination by the defense counsel, indicated that the photographs were a fair representation of the damage done to the portions shown. Although the plaintiff asserts that it is necessary for the photographer to authenticate the photos, such is not the law in Michigan. Since the plaintiff, a witness, admits that they are a fair representation of what is shown, they were properly admitted to be given whatever weight the jury thought was their due. *Martin Parry Corp.* v. *Berner* (1932), 259 Mich 621, 625; *Oppenheim* v. *Rattner* (1967), 6 Mich App 554.

Plaintiff makes the additional complaint that the jury was never properly instructed as to the weight which could be given to the photographs. However,

no such instruction was requested at trial. This failure by the plaintiff to make a timely request for an instruction on this matter eliminates the question from our consideration. *Obeginski* v. *James* (1966), 4 Mich App 90.

No reversible error having been committed by the trial court in admitting the photographs in question here, we affirm his decision to allow them in.

*Did the trial court commit reversible error in sustaining an objection to the question, "How can those degenerative changes come about?", where there was no claim or testimony that plaintiff had been subjected to any degenerative process?*

Although on appeal the plaintiff seeks to re-phrase this issue and alleges that the trial court refused to allow the examination of Dr. Park as to the need for a number of X-rays, the trial court did not foreclose the examination as to the reason or need for such X-rays; but only ruled that the particular question was irrelevant as there was no indication that the plaintiff had been subjected to any such "degenerative process."

After an examination of the record, we cannot help but uphold the trial court's ruling as to this question.

*Did the trial court commit reversible error in allowing cross-examination of plaintiff's expert, Dr. Park, as to his qualifications, credibility, and professional ability?*

The plaintiff complains on appeal that the trial court allowed the defense to attack Dr. Park collaterally by examining him as to his qualifications. Yet, since the doctor testified as an expert, and

since the plaintiff spent considerable time establishing his expertise, the trial court was certainly not abusing its discretion in allowing the defense to question him as to his qualifications. *Andre* v. *Hardin* (1875), 32 Mich 324; 11 MLP, Evidence, § 260, p 484.

Further, where one party's witness, as here with Dr. Park, presents testimony which, if believed by the jury, would establish that party's case, the burden of challenging by competent proofs the credibility or the competence of such testimony devolves on the opposite party. *State Automobile Mutual Insurance Company* v. *Ropp* (1967), 7 Mich App 698, 702, 703.

The defendant was obliged, therefore, to attempt to undercut the credibility and professional competence of Dr. Park or be bound by his affirmative statements. Here again, the latitude of the examination is in the sound discretion of the trial court.

*Did the trial court commit reversible error in allowing the cross-examination of the plaintiff as to his record of convictions for prior driving violations?*

Since the trial court ruled that evidence of such convictions was admissible only for the purpose of testing the credibility of the plaintiff, it was properly admitted for that purpose under GCR 1963, 607.* *Taylor* v. *Walter* (1968), 15 Mich App 361; see 3 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), pp 396–408.

Having found no reversible error we affirm the verdict of no cause of action.

Affirmed. Costs to defendant.

All concurred.

---

* See 374 Mich xv.