OBERMILLER v PATOW

1. AUTOMOBILES—NEGLIGENCE—EVIDENCE—SUSPENSION OF LICENSE—
ADMISSIBILITY.

Informing a jury of the suspension of a driver's license is the
equivalent of placing before the jury the driver's record of
traffic convictions, and since the record of prior traffic convic-
tions is inadmissible as proof of the driver's subsequent negli-
gence, the trial court erred in admitting into evidence over
objection testimony disclosing the suspension of a deceased
driver's license as proof of that driver's subsequent negligence. ·

2. AUTOMOBILES—NEGLIGENCE—EVIDENCE—TRAFFIC CONVICTIONS—
ADMISSIBILITY.

A person's record of traffic convictions is admissible to test his
credibility, to rebut allegations that he is or was habitually a
careful driver, or to prove negligent entrustment to him.

3. AUTOMOBILES—DRAMSHOP ACT—EVIDENCE—TRAFFIC CONVICTIONS—
ADMISSIBILITY—CREDIBILITY.

The driving record of the decedent in an action brought under
the dramshop act by the decedent's wife for damages for his
death in an automobile accident was not relevant to his wife's
credibility and was therefore inadmissible to impeach her ·
testimony.

4. AUTOMOBILES—DRAMSHOP ACT—INSTRUCTIONS TO JURY—APPEAL
AND ERROR.

The trial court's instructions that defendants in a dramshop
action were liable if they "contributed" to the decedent's intoxi-
cated condition and if that condition "contributed" to the
accident adequately stated the law; therefore, it was not error
for the court to refuse to give the plaintiff's proposed instruc-
tions on the same subject.

5. INTOXICATING LIQUORS—DRAMSHOP ACT—PROOF OF INTOXICATION—
CREDIBILITY OF WITNESSES—QUESTION FOR JURY.

The trial court properly denied a motion for directed verdict by a

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 1002–1004.
[3–5] 7 Am Jur 2d, Automobiles and Highway Traffic § 346.

defendant in a dramshop action on the ground that the evidence failed to establish that plaintiff's decedent was intoxicated when a drink was served to him where the testimony of the plaintiff, if believed, established that the deceased was intoxicated at that time, since it is the jury's prerogative to assess the credibility of witnesses.

Appeal from Saginaw, Eugene Snow Huff, J. Submitted Division 3 February 6, 1973, at Grand Rapids. (Docket No. 13280.) Decided March 27, 1973. Leave to appeal denied, 389 Mich 815.

Complaint by Joyce A. Obermiller for herself and as guardian of the estates of Kim A. Obermiller and Scott Obermiller, minors, against Lamerne C. Patow, doing business as Bruce's Bar, and Allen Urich, doing business as the Embra Bar, under the dramshop act for damages resulting from an automobile accident. Judgment of no cause of action in favor of both defendants. Plaintiffs appeal. Defendant Urich cross appeals. Reversed and remanded for new trial against both defendants.

*Cicinelli, Mossner, Majoros, Harrigan & Alexander,* for plaintiffs.

*Cook, Nash, Deibel & Borrello,* for defendant Lamerne C. Patow.

*Collison & Fordney,* for defendant Allen Urich.

Before: DANHOF, P. J., and R. B. BURNS and J. H. GILLIS, JJ.

R. B. BURNS, J. Richard Obermiller was killed at approximately 2:30 a.m. on Saturday, June 10, 1967, when the car he was driving failed to negotiate a curve and struck a utility pole. At the time of his death Obermiller was drunk. His wife and

children brought this action against two of the taverns visited by Obermiller in the hours immediately before his death, alleging liability under the dramshop act. MCLA 436.22; MSA 18.993. Verdicts of no cause of action were returned in favor of both defendants. Plaintiffs appeal. Defendant Urich cross-appeals. It is our opinion that plaintiffs are entitled to a new trial—against both defendants.

## I.

The very first question asked of Mrs. Obermiller on cross-examination was whether her husband was a licensed driver at the time of his death. Her counsel objected immediately and strenuously. His objection was overruled, and Mrs. Obermiller answered that her husband's license had been suspended. Defense counsel pursued the subject at length.

We agree with plaintiffs that informing the jury of the suspension of Obermiller's license was the equivalent of placing before the jury Obermiller's record of traffic convictions. Admittedly, the jury was not told why Obermiller's license had been suspended. However, it is common knowledge that licenses are usually suspended because the driver has been convicted of several minor traffic offenses or of some grievous traffic offense. We also agree that it was error for the trial court to permit the jury to be told of Obermiller's driving record.

An individual's record of prior traffic convictions is not admissible as proof of that individual's subsequent negligence. *Lucas v Carson,* 38 Mich App 552, 559–560 (1972). *Cf. Grand Rapids & I R Co v Huntley,* 38 Mich 537, 540 (1878); *People v Thompson,* 122 Mich 411, 425–429 (1899), and cases cited therein; *Crane v Woodbury,* 41 Mich

App 11, 15–16 (1972). However, an individual's record of traffic convictions may be made known to a jury:

(A) To test that individual's credibility, *Taylor v Walter,* 385 Mich 599 (1971), adopting on rehearing Justice BLACK's opinion for reversal, *Taylor v Walter,* 384 Mich 114, 117–120 (1970); *Williams v Fiedlar,* 22 Mich App 179 (1970), aff'd, 386 Mich 221 (1971);

(B) To rebut allegations that the individual is or was habitually a careful driver, *Olweean v Wayne County Road Commission,* 385 Mich 698, 702–703 (1971); or

(C) To prove negligent entrustment to that individual, *Elliott v A J Smith Contracting Co, Inc,* 358 Mich 398 (1960); *Perin v Peuler (On Rehearing),* 373 Mich 531 (1964); *Tortora v General Motors Corp,* 373 Mich 563 (1964); *Paratore v Furst,* 15 Mich App 568 (1969).

Defendants claim that Obermiller's record of traffic convictions was admissible to rebut plaintiffs' allegations that, even when drunk, Obermiller was a relatively careful driver. Defendants put the cart before the horse. At the time Mrs. Obermiller was asked about the suspension of her husband's license, plaintiffs had made no claim whatsoever that Obermiller was a generally careful driver. Such allegations were made only in response to questions on cross-examination and only after the jury had been informed of the suspension of Obermiller's license. It appears to us that plaintiffs testified as to Obermiller's good driving habits to rebut defendants' introduction of his poor driving record, not that defendants introduced the driving record to rebut plaintiffs' testimony. Thus we do not see how the *Olweean* case is applicable to the instant case.

Defendants concede that, because Obermiller did not testify, his driving record was not admissible to impeach his credibility. *Olweean v Wayne County Road Commission, supra,* 701; *cf. Kuhnee v Miller,* 37 Mich App 649, 653 (1972). However, defendants claim that Obermiller's driving record was admissible to impeach the testimony of Mrs. Obermiller. The trial court agreed. We do not.

Mrs. Obermiller testified that between 10 and 10:30 p.m. on Friday, June 9, 1967, she telephoned Bruce's Bar to inquire as to the whereabouts of her husband; that a woman, presumably a waitress, answered the telephone; that Mrs. Obermiller heard a voice, which she recognized as that of her husband, tell the waitress to inform his wife that he was not in the bar; and that Obermiller sounded drunk. The waitress on duty in Bruce's Bar the evening of June 9–10, 1967, testified that she never answered a call from Mrs. Obermiller and that she, the waitress, did not see the deceased in the tavern before 1:30 a.m. on June 10th. Defendants claim that a wife who believes her husband to be drunk and who knows that he does not have a valid driver's license will arrange to have him driven home and that Mrs. Obermiller's failure to make such arrangements is evidence that she was lying about her 10 p.m. call to Bruce's Bar.

Even if Mrs. Obermiller's failure to arrange for her husband's transportation home is probative of her veracity in this case, the source of any concern would have been her husband's intoxicated condition, not the status of his right to operate a motor vehicle. A drunk, whether licensed or not, is incapable of properly operating a motor vehicle. Therefore, Obermiller's record of traffic convictions is irrelevant to Mrs. Obermiller's credibility. It is the

most fundamental of the many rules of evidence that evidence is admissible only if relevant to some material issue. *White v Bailey,* 10 Mich 155 (1862). Since Obermiller's driving record is not relevant to his wife's credibility, *Taylor v Walter, supra,* is not even arguably applicable.

Defendant Patow's case was argued to the jury on the lone theory that Patow had not contributed to Obermiller's intoxication because Obermiller never consumed the one beer admittedly served him at Bruce's Bar. We cannot agree with Patow that the jury verdict in his favor must be considered a finding that Obermiller did not consume that one beer and that, therefore, admission of Obermiller's driving record, even if erroneous, did not prejudice plaintiffs' case. Once advised that Obermiller was, in the opinion of the Secretary of State, a poor driver, the jury might well have denied recovery to plaintiffs because, in their opinion, the sole cause of the fatal accident was Obermiller's habitually poor driving or because Obermiller had received his just deserts from the Almighty and could not benefit from defendants' involvement. Therefore, in our opinion the jury's verdicts are as likely the result of improper considerations as proper ones.

## II.

The trial court instructed the jury to return verdicts for plaintiffs if the sale of intoxicants by "either or both defendants * * * *contributed* to his [Obermiller's] intoxicated condition * * * and proximately caused or *contributed* to * * * the automobile accident which resulted in his [Obermiller's] death". Plaintiffs claim that the trial court should have more explicitly instructed the jury that "it is not necessary for the plaintiff * * *

to prove that the intoxicated condition of Richard Obermiller was the sole or only cause of this accident" (proposed instruction #8), that "if you find there was an unlawful sale of beer at * * * other taverns * * * before or after he [Obermiller] attended these [defendants'] taverns, * * * this would not in any way diminish the liability of * * * defendants in this case" (proposed instruction #9), and that plaintiffs were entitled to collect full damages from either tavern if both were adjudged liable (proposed instruction #10).

The trial court's instructions that defendants were liable if they "contributed" to Obermiller's intoxicated condition and if that condition "contributed" to the accident adequately stated the law. Therefore, it was not error for the court to refuse to give plaintiffs' proposed instructions on the same subject. *Wright v Whitmire,* 31 Mich App 692, 697 (1971); *Simonetti v Rinshed-Mason Co,* 41 Mich App 446, 459 (1972). However, since this case must be retried, if the same evidence is presented, we suggest the trial court be more explicit when instructing the next jury.

During cross-examination of plaintiffs' witnesses defense counsel attempted to establish that the tires on Obermiller's car were bald and that a safe speed for the curve in which Obermiller lost control was not adequately posted. In other words, defendants suggested that the cause of the fatal accident was either defective equipment or defective roadsigns. Thus, the jury would have been better instructed had they been explicitly told that Obermiller's intoxication need have been only one of several causes.

Defendants also presented uncontested evidence that Obermiller had visited at least one bar other than theirs and argued convincingly that the evi-

dence presented by plaintiffs suggested that he had visited several other bars that evening. Thus, plaintiffs' proposed instruction #9 would have been more helpful to the jury than the one word "contributed".

## III.

At the close of plaintiffs' proofs defendant Urich moved for a directed verdict on the ground that the evidence failed to establish that Obermiller was intoxicated when admittedly served a single beer in defendant Urich's tavern, the Embra Bar. The motion was denied. We affirm that denial.

Mrs. Obermiller testified that, when she telephoned Bruce's Bar between 10 and 10:30 p.m., she recognized her husband's voice in the background and that he sounded drunk. Defendant Urich conceded that Obermiller was served a beer in his tavern sometime between 10 and 11 p.m. Therefore, if Mrs. Obermiller is believed, plaintiffs have established that the deceased was intoxicated when served at defendant Urich's tavern. Had the trial court granted the motion for directed verdict, it would have usurped the jury's prerogative to assess credibility. *Davis v Terrien,* 364 Mich 82, 84 (1961).

Reversed and remanded for new trial against both defendants.

Costs to plaintiffs.

All concurred.