FERGUSON v DELAWARE INTERNATIONAL SPEEDWAY

Docket No. 80671. Submitted March 16, 1987, at Detroit. Decided November 3, 1987.

Ann Ferguson and William Ferguson brought an action in the Wayne Circuit Court against Delaware International Speedway and an unknown corporation seeking damages for injuries received by Ann Ferguson (hereafter plaintiff) in a slip-and-fall accident at the Delaware International Speedway (hereafter defendant). A default was entered against the defendant and was thereafter set aside by the trial court, Arthur M. Bowman, J. A judgment of no cause of action was subsequently entered in favor of the defendant by the trial court, Thomas J. Foley, J. Plaintiff's motions for a new trial and reconsideration of taxation of costs were thereafter denied by the trial court. Plaintiffs appealed.

The Court of Appeals *held:*

1. The verdict was not against the great weight of the evidence. The trial court did not abuse its discretion by not granting plaintiffs a new trial on this ground.

2. The trial court did not err in allowing defendant to introduce certain photographs into evidence.

3. The trial court's jury instructions were not erroneous.

REFERENCES

Am Jur 2d, Appeal and Error §§ 115, 123-127, 776, 894.

Am Jur 2d, Evidence §§ 249 *et seq.*; 785 *et seq.*

Am Jur 2d, Judgments §§ 1152 *et seq.*

Am Jur 2d, New Trial §§ 120, 121, 140, 141, 220.

What constitutes "good cause" allowing federal court to relieve party of his default under Rule 55(c), of Federal Rules of Civil Procedure. 29 ALR Fed 7.

Supreme Court cases determining whether admission of evidence at criminal trial in violation of federal constitutional rule is prejudicial error or harmless error. 31 L Ed 2d 921.

Admissibility in evidence of colored photographs. 53 ALR2d 1102.

Appealability of order setting aside, or refusing to set aside, default judgment. 8 ALR3d 1272.

Even if the instructions were erroneous, such error was harmless error.

4. The trial court did not abuse its discretion in setting aside the default judgment or in its order taxing costs.

Affirmed.

1. NEW TRIAL — MOTIONS AND ORDERS.

A new trial may be granted where the verdict or decision is against the great weight of the evidence or is contrary to law (MCR 2.611[A][1][e]).

2. APPEAL — EVIDENCE.

Errors in the admission or exclusion of evidence will not be disturbed on appeal unless refusal to take this action appears to the reviewing court to be inconsistent with substantial justice (MCR 2.613[A]).

3. EVIDENCE — RELEVANT EVIDENCE.

Evidence must be relevant before it may be admitted at trial; questions of relevance are left to the discretion of the trial court (MRE 401, 403).

4. EVIDENCE — PHOTOGRAPHIC EVIDENCE.

The introduction of photographs into evidence is a matter of discretion with the trial court; the central test, where an abuse of discretion is claimed regarding the introduction of photographs simulating a previously existing situation, is whether the photographs present a reasonable or faithful reproduction of the scene as it existed at the time of the accident; the photographer is not needed for authentication as long as a witness admits that the photographs are a fair representation of what is shown (MRE 901).

5. APPEAL — JURY INSTRUCTIONS.

Jury instructions in criminal and civil cases must be read in their entirety on appeal; it is improper for an appellant to extract several short excerpts from the entire context of the instructions and discuss their claimed inadequacies at length.

6. APPEAL — HARMLESS ERROR.

Reversal is not warranted where the result at trial would not have been different had the trial been conducted free of the errors alleged on appeal.

7. APPEAL — DEFAULT JUDGMENTS.

The decision to set aside a default judgment is within the sound discretion of the trial court and will not be reversed on appeal absent a clear abuse of discretion.

8. APPEAL — DEFAULT JUDGMENTS.

A default judgment may be set aside only when three conditions are all fulfilled: (1) good cause for failure to make timely response must be shown; (2) a meritorious defense must be established; and (3) the showing of a meritorious defense must be based on an affidavit of facts (GCR 1963, 520.4).

9. APPEAL — DEFAULT JUDGMENTS — GOOD CAUSE.

Good cause sufficient to warrant setting aside a default judgment includes: (1) a substantial defect or irregularity in the proceedings upon which the default was based; (2) a reasonable excuse for failure to comply with requirements that created the default; or (3) some other reason showing that manifest injustice would result if the default judgment were allowed to stand; good cause and an affidavit of facts showing a meritorious defense are required before a default may be set aside for good cause (GCR 1963, 520.4).

10. TRIAL — PROTECTIVE ORDERS.

A trial court may issue any order which justice requires to protect a party or witness from annoyance, undue expense, embarrassment, or oppression (MCR 2.302[B][4], and [C]).

*Cummings, McClorey, Davis & Acho, P.C.* (by *Susan D. Nelson* and *Robert L. Blamer*), for plaintiffs.

*Puleo, Noeske & Tarnavsky* (by *Peter J. Lyons*), and *Gromek, Bendure & Thomas* (by *John A. Lydick*), of Counsel, for defendant.

Before: SHEPHERD, P.J., and J. H. GILLIS and S. J. LATREILLE,* JJ.

SHEPHERD, P.J. Following a three-day trial, the jury returned a verdict of no cause of action in favor of defendant Delaware International Speedway (defendant). We affirm.

This is a slip-and-fall personal injury action. On July 1, 1978, plaintiff Ann Ferguson (plaintiff), and her grandson traveled to defendant's race track in

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Delaware, Ontario, to watch her oldest son race. They arrived at approximately 4:00 or 5:00 P.M. and followed the flow of traffic to obtain a parking space.

After pulling into the race track area, plaintiff paid for parking at a ticket booth. She asked the attendant where to park and he replied, "Just pull right in here to the left, follow the rest of the cars." Plaintiff parked her car in a gravel area located at the bottom of a hill. Afterwards, she asked the same attendant how to reach the grandstand and he stated, "Go up this hill; when you get up to the top of the hill you turn right and there will be a ticket booth there and then you will pay your admission and get in, the stands are up to the right of the hill." Plaintiff, holding her grandson by the hand, proceeded up the hill with other spectators on both sides of her. It was broad daylight.

Plaintiff testified that the hill was rather steep, grassy, and patchy in spots. There was no designated path on the hill and plaintiff did not look around for another means of reaching the stands while walking up. It took her ten minutes to walk up the hill. Plaintiff testified that on the way up she did not notice the hill's steepness.

At the top, plaintiff paid for admission and went into the stands. She watched the races and bought hot dogs and coffee, but no alcohol. The races ended at approximately 11:00 P.M. Plaintiff decided to return to her car and wait for her husband and two sons because the weather was getting colder.

Plaintiff left the grandstand and proceeded down the same way she had come up. When plaintiff reached the hill, however, there were no lights and the grass was wet and slippery. Plaintiff testified that the hill had approximately a forty-five-degree incline. Before going down the hill, she did not

look for an alternate route to reach her car since it was dark. Plaintiff stated that there were no instructions to spectators leaving the stands.

While walking down the hill, plaintiff slipped and landed on her buttocks in a sitting position. She tried to stand up, but her right leg was hurting. Plaintiff scooted down the hill on her buttocks. At the bottom of the hill, plaintiff scooted herself to the car and waited inside for her family. While waiting for her family, plaintiff noticed that only one light post was near the entrance at the ticket booth and no other lights were on the hill.

When her family arrived at the car, plaintiff was transported by ambulance to London University Hospital where she received pain medication and was told she needed surgery. Plaintiff decided to undergo surgery at Mt. Carmel Hospital in Detroit.

Plaintiff underwent surgery and remained hospitalized for two weeks. A long cast was placed on her right leg. Plaintiff wore the cast for 2 to 2½ months and then wore a short leg cast for six weeks. Plaintiff returned to work sometime in 1979 and continues to work. Plaintiff testified that she suffers from pain in her ankle and back.

Carl Lave, president of defendant Speedway, testified that in 1978 he was in charge of running the concessions at the track and maintaining the grounds. He personally cut the grass at the track at least two or three times that summer. He noticed no irregularities on the hill such as holes or the like. Lave hired outside help to maintain the premises during the other times.

On cross-examination, Lave testified that no signs indicated parking areas and the hill had no lights other than the one near the booth. Lave was aware that people parked at the bottom of the hill.

He stated that the hill had a twenty-degree incline. The hill had no sidewalk, but there were paths made in the grass where people had previously walked.

The jury returned a verdict of no cause of action in defendant's favor. At the hearing on plaintiffs' motion for a new trial, plaintiffs argued five grounds: (1) the verdict was against the great weight of the evidence; (2) defendant's photographic evidence was improperly admitted; (3) the court erred in instructing the jury on comparative negligence; (4) the court erred in setting aside a previously entered default judgment against defendant, and (5) the costs assessed by the trial court were improper.

After hearing arguments, the trial court determined that the verdict was neither contrary to law nor against the great weight of the evidence, since the jury decided that defendant was not negligent. There was testimony that plaintiff had her grandson with her and the issue of whether plaintiff's or defendant's conduct was the cause of the accident constituted a jury question. The trial court's ruling was incorporated into an order.

GCR 1963, 527.1(5), now MCR 2.611(A)(1)(e), provided:

> A new trial may be granted to all or any of the parties and on all or part of the issues whenever their substantial rights are materially affected, for any of the following causes:
>
> * * *
>
> (5) That the verdict or decision is against the great weight of the evidence, or is contrary to law.

In *Carden v General Motors Corp,* 156 Mich App 202, 206; 401 NW2d 273 (1986), quoting *May v Parke, Davis & Co,* 142 Mich App 404, 410-411; 370 NW2d 371 (1985), this Court stated:

It is within the trial court's sound discretion to grant or deny a motion for new trial. The standard of review is whether the jury's verdict was against the overwhelming weight of evidence. A reviewing court affords deference to the trial judge's decision since the trial judge, having heard the witnesses, is uniquely qualified to judge the jury's assessment of their credibility. This Court will not substitute its judgment for that of the jury unless a review of the record reveals a miscarriage of justice.

In the instant case, the verdict was not against the great weight of the evidence. Plaintiffs' evidence indicated that the hill was steep, dark, and unlit. While walking down the hill, plaintiff was holding her grandson's hand and simply "slipped." Defendant's evidence revealed that the hill was not as steep as plaintiff claimed and the hill was not totally dark since there was a light near the booth and some lighting at the top of the hill. Furthermore, defendant's president stated that the track grounds were kept up and the grass was mowed regularly. There were no defects or obstructions on the hill. There was even a path of sorts from patrons who had previously traversed the hill. We are unable to find that the verdict of no cause of action was against the great weight of the evidence. The jury apparently did not find that the nature of the hill or defendant's acts or omissions constituted a breach of any duty. The jury may not have believed that the hill was as steep as plaintiff claimed. Thus, the trial court did not abuse its discretion by not granting plaintiffs a new trial on this ground.

Plaintiffs argue that the trial court erred by admitting certain photographs. This Court has held that the decision of a trial court concerning the admissibility of evidence will not be disturbed on appeal unless that decision is clearly erroneous.

*People v McKinney,* 88 Mich App 715, 720-721; 278 NW2d 728 (1979). Other panels have stated that the standard of review is for an abuse of discretion. See, e.g., *Gagnon v Dresser Industries Corp,* 130 Mich App 452, 463; 344 NW2d 582 (1983), aff'd 424 Mich 166 (1985). Errors in the admission or exclusion of evidence shall not be disturbed on appeal unless "refusal to take this action appears to the court inconsistent with substantial justice." MCR 2.613(A).

As a general premise, evidence must be relevant before it may be admitted. Relevancy is defined in MRE 401:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Questions of relevance are left to the discretion of the trial court. *McClaine v Alger,* 150 Mich App 306, 314; 388 NW2d 349 (1986). MRE 403 provides, however:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Specifically, the introduction of photographs into evidence is a matter of discretion with the trial judge. *Kolcon v Smewing,* 28 Mich App 237, 242; 184 NW2d 244 (1970), lv den 384 Mich 830 (1971). Before a photograph may be admitted into evidence, it must satisfy MRE 901, which provides in pertinent part:

(a) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

(b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication of identification conforming with the requirements of this rule:

(1) *Testimony of witness with knowledge.* Testimony that a matter is what it is claimed to be.

The introduction of photographs simulating a previously existing situation is a matter within the trial court's discretion. *Birkhill v Todd,* 20 Mich App 356, 363; 174 NW2d 56 (1969). Where an abuse of discretion is claimed, the central test is whether the photographs present a reasonable or faithful reproduction of the scene as it existed at the time of the accident. *Kaminski v Wayne Co Road Comm'rs,* 370 Mich 389, 395-399; 121 NW2d 830 (1963). The photographer is not needed for authentication. As long as a witness admits that a photograph is a fair representation of what is shown, it is properly admitted to be given whatever weight the jury deems is due. *Williams v Fiedlar,* 22 Mich App 179, 185; 177 NW2d 461 (1970), aff'd 386 Mich 221; 191 NW2d 52 (1971).

Plaintiffs objected to the introduction of the photographs on the basis of relevancy, arguing that they did not accurately depict the area where plaintiff fell. The trial court admitted the photographs, not to depict the place where plaintiff fell, but to show that there were less steep areas on the hill than where plaintiff had traversed.

We believe that, although the photographs were not relevant to show where plaintiff fell, they were relevant to show that there were less steep areas of the hill in an effort to attribute fault for the

accident to plaintiff. The photographs were not prejudicial since they merely presented the area and were not inflammatory. Furthermore, the photographs were properly authenticated since Lave testified that they accurately represented the area as it existed in 1978. Although the photographs depicted less steep areas, the jury could as easily have believed plaintiff's testimony that the hill was much steeper where she was walking, but apparently chose not to accept her version. We find no error.

Plaintiffs next argue that the trial court erred in instructing the jury. One of the instructions concerned plaintiff's duty to exercise reasonable care under the circumstances. In *Jaworski v Great Scott Supermarkets, Inc,* 403 Mich 689, 697; 272 NW2d 518 (1978), the Supreme Court stated:

> It is axiomatic that it is error to submit to the jury an instruction on an issue not sustained by the evidence. *Susich v Michigan Consolidated Gas Co,* 292 Mich 612; 291 NW 26 (1940). See also *Sakorraphos v Eastman Kodak Stores, Inc,* 367 Mich 96; 116 NW2d 227 (1962), *Winchester v Meads,* 372 Mich 593; 127 NW2d 337 (1964), GCR 1963, 516.7, and SJI 20.01.

Further, in *People v Dye,* 356 Mich 271, 279; 96 NW2d 788 (1959), cert den 361 US 935 (1960), our Supreme Court enunciated the standard of review for jury instructions, stating that it was improper for the appellant to extract several short excerpts from the entire context of the instructions and discuss their claimed inadequacies at length. The Court stated that jury instructions in criminal and civil cases must be read in their entirety.

We believe that the evidence warranted the comparative negligence instruction. Plaintiff's testimony indicated no reason why she fell on the

hill, such as a hole or the like. Although she stated that the hill was dark and steep and that the grass was dewy, she could have just as easily fallen from her own doing, i.e., while distracted by her grandson or looking for her car.

Defendant argues that, even if the instruction was erroneous, the error was harmless, citing *Pelley v Peterbilt Motors Co,* 133 Mich App 664, 667; 350 NW2d 787 (1984), in which this Court stated that reversal is not to be granted where the absence of the alleged error would not have changed the result. In *Pelley,* plaintiff appealed from the trial court's ruling denying him the opportunity to apply Michigan's comparative negligence law rather than Ohio's contributory negligence standard to the case. This Court affirmed, stating that, even if the trial court's ruling was erroneous, the error was harmless since the jury never reached the comparative or contributory negligence issue, as the special verdict form indicated that the jury found defendant not negligent. 133 Mich App at 666-667. See also *Cornforth v Borman's, Inc,* 148 Mich App 469; 385 NW2d 645 (1986).

Similarly, the jury in this case found defendant not negligent on a special verdict form. The jury was told that it need not reach any of the other questions on the verdict form if the answer to the first question, whether defendant was negligent, was "No." Thus, even if the instruction was erroneous, we believe that the error was harmless after reviewing the instructions in their entirety.

On October 3, 1983, defendant moved to set aside a previously entered default judgment. At the hearing on January 14, 1984, it was discovered that in May, 1981, the trial court had entered a default judgment against defendant for failure to answer plaintiffs' first amended complaint. The

May, 1981, default was apparently never set aside. At this hearing, the trial court set aside the default judgment.

GCR 1963, 520.4, now MCR 2.603(D), provided:

> For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 528. If personal service was made upon the party against whom the default was taken, it shall not be set aside unless application to have it set aside is made either before the entry of judgment or within 4 months after the default was regularly filed or entered except as provided in Rule 528. Any order setting aside such default shall be conditioned upon the party against whom the default was taken paying the taxable costs incurred by the other party in reliance upon the default, except as prescribed in subrule 526.8. Other conditions may be imposed as the court deems proper. A proceeding to set aside default or a default judgment, except when grounded on want of jurisdiction over the defendant, shall be granted only if good cause is shown and an affidavit of facts showing a meritorious defense is filed.

The decision to set aside a default judgment is a decision within the sound discretion of the trial court and will not be reversed on appeal absent a clear abuse of discretion. *Yenglin v Mazur,* 121 Mich App 218, 221; 328 NW2d 624 (1982).

In *Novi Construction, Inc v Triangle Excavating Co,* 102 Mich App 586, 589; 302 NW2d 244 (1980), this Court discussed the requirements of GCR 1963, 520.4:

> "[A] default 'may' be set aside only when three conditions are all fulfilled. First, good cause for failure to make timely response must be shown. Second, a meritorious defense must be established. Third, the showing of a meritorious defense must

be based on an 'affidavit of facts.' GCR 1963, 520.4. Whether these three conditions are fulfilled is a matter within the discretion of the trial judge. *Walters v Arenac Circuit Judge* (1966), 377 Mich 37, 47 [138 NW2d 751]; *Freeman v Remley* (1970), 23 Mich App 441 [178 NW2d 816]."

Good cause sufficient to warrant setting aside a default judgment includes: (1) a substantial defect or irregularity in the proceedings upon which the default was based; (2) a reasonable excuse for failure to comply with requirements that created the default; or (3) some other reason showing that manifest injustice would result if the default judgment were allowed to stand. *Glasner v Griffin,* 102 Mich App 445, 448; 301 NW2d 889 (1980). An affidavit of fact showing a meritorious defense must be filed before a default may be set aside for good cause. *Thomas v Jones,* 120 Mich App 191, 194; 327 NW2d 433 (1982). Good cause and the affidavit are required since the policy of this state is generally against setting aside defaults and default judgments that have been properly entered. *Glasner, supra* at 448.

The trial judge set aside the default judgment since he felt it would be manifestly unjust to allow a default to stand under the circumstances. Defendant had failed to answer because plaintiffs did not serve the first amended complaint upon defendant's attorneys once they had filed a notice of appearance. We hold that defendant has shown good cause for setting aside the default. Defendant filed an affidavit showing the meritorious defense. The trial court's ruling was not an abuse of discretion.

Finally, plaintiffs object to the assessment of $629.50 in costs against plaintiffs. These included $311 for an examination of plaintiff Ann Ferguson by Dr. William Kohen, an expert retained by

defendant, a $225 witness fee for Dr. Kohen, and $93.50 for the cost of taking Dr. Kohen's deposition. It appears that, after Dr. Kohen examined plaintiff and was deposed, defendant determined not to introduce Dr. Kohen's testimony at trial, apparently concluding that it was favorable to plaintiffs. Consequently, plaintiffs introduced Dr. Kohen's deposition testimony in their case in chief. The court awarded the above sums to defendant on the theory that plaintiffs had utilized defendant's expert after defendant had paid for his services.

Defendant, as the prevailing party, was entitled to costs as a matter of course under then-applicable GCR 1963, 526.1, now MCR 2.625. The power to tax costs is wholly statutory. Costs are not recoverable where no statutory authority exists for awarding them. *Brown v Dep't of State Highways,* 126 Mich App 392, 396; 337 NW2d 76 (1983). MCL 600.2405; MSA 27A.2405 permits an award of witness fees and "[m]atters specially made taxable elsewhere in the statutes or rules."

Plaintiffs were permitted to use Dr. Kohen's deposition under GCR 1963, 302.4(3), now MCR 2.308(A)(1)(c). We are unable to locate any specific statute or court rule covering the treatment of expenses in this situation. This is not a typical cost assessment situation, however. We believe an analogous situation was presented in *Roe v Cherry-Burrell Corp,* 28 Mich App 42; 184 NW2d 350 (1970), in which the defendant sought to depose the plaintiff's expert witness. In holding that the defendant should be allowed to do so, this Court required that the defendant pay the expert for his time to avoid the unfairness of allowing the defendant to obtain information without expense from an expert hired by the plaintiff. The Court's conclusion was based in part on GCR 1963, 306.2, now

MCR 2.302(C), which provided comprehensive powers to enter protective orders regulating depositions.

The holding in *Roe* was subsequently embodied in MCR 2.302(B)(4), which provides in part:

(4) *Trial Preparation; Experts.* Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subrule (B)(1) and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

* * *

(a)(ii) A party may take the deposition of a person whom the other party expects to call as an expert witness at trial.

(iii) On motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions (pursuant to subrule [B][4][c]) concerning fees and expenses as the court deems appropriate.

(b) A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in MCR 2.311(B) or on a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

(c) Unless manifest injustice would result

(i) the court shall require that the party seeking discovery under subrules (B)(4)(a)(ii) or (iii) or (B)(4)(b) pay the expert a reasonable fee for time spent in a deposition, but not including preparation time; and

(ii) with respect to discovery obtained under subrule (B)(4)(a)(ii) or (iii), the court may require, and with respect to discovery obtained under subrule (B)(4)(b) the court shall require, the party seeking discovery to pay the other party a fair

portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert.

In commenting upon the provisions of subrule (B)(4)(c), 2 Martin, Dean & Webster, Michigan Court Rules Practice (3d ed), p 182, notes that "Michigan has long recognized that to permit one party to acquire what another party has paid for without compensation, or to require one party to pay for a deposition requested by the other is patently unfair."

The situation in this case is perhaps somewhat unusual. The court rules cited above generally contemplate payment of these expenses prior to the taking of the deposition. We see no reason to so limit the application of the rationale in *Roe,* however. GCR 1963, 306.2, upon which *Roe* relied, authorized any "order which justice requires to protect the party or witness from annoyance, *undue expense,* embarrassment, or oppression." This provision has been carried forward into MCR 2.302(C).

In the instant case, the expenses requested by defendant all related to obtaining an expert opinion from Dr. Kohen which defendant chose not to use but which plaintiffs used at trial. We believe the order entered was not so much a typical taxation of statutory costs as an order requiring plaintiffs to pay those expenses of using Dr. Kohen's testimony which justice and fairness required that plaintiffs pay. We find no abuse of discretion.

Affirmed.