### ROE v. CHERRY-BURRELL CORPORATION

1. DISCOVERY—EXPERT WITNESS—DEPOSITIONS—PRIVILEGE.

A party may either claim a privilege at the taking of a deposition and not be allowed to offer at trial the testimony of the witness pertaining to the evidence objected to in the deposition or the party may allow the witness to be deposed; the party can be put to a choice at the taking of the deposition (GCR 1963, 302.1).

2. DISCOVERY—EXPERT WITNESS—DEPOSITIONS.

A litigant may depose his adversary's expert witness who will testify at trial, because the time of disclosure is only advanced and because effective cross-examination of an expert requires advance preparation (GCR 1963, 302.1; 306.2).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 23 Am Jur 2d, Deposition and Discovery §§ 264, 265.
[2-4] 23 Am Jur 2d, Deposition and Discovery §§ 199, 200.
    Pretrial deposition-discovery of opinions of opponent's expert witnesses. 86 ALR2d 138.
[5] 23 Am Jur 2d Deposition and Discovery § 145.

3. DISCOVERY—EXPERT WITNESS—PURPOSE.

Pretrial disclosures of an opponent's expert witnesses is necessary if the parties are to fairly evaluate their claims for settlement purposes, determine the real areas of dispute, narrow the actual issues, avoid surprise, and prepare adequately for cross-examinations and rebuttal (GCR 1963, 302.1; 306.2).

4. DISCOVERY—EXPERT WITNESS—DEPOSITIONS—EXPENSES.

A judge, before allowing a party's expert witness's deposition to be taken by the party's adversary, may require the deposing party to pay the expert for his time (GCR 1963, 306.2).

5. DISCOVERY—DEPOSITIONS—AFTER PRETRIAL CONFERENCE—RIGHT RESERVED.

A party was not barred from taking the deposition of his adversary's expert witness even though he desired to take the deposition after the pretrial conference had been completed where the pretrial summary expressly reserved the right to each of the parties to take depositions after the pretrial conference and each of the parties availed itself of that right (GCR 1962, 301.7).

Appeal from Ingham, Sam Street Hughes, J. Submitted Division 2 January 9, 1970, at Lansing. (Docket No. 6,755.) Decided November 27, 1970.

Complaint by Joseph B. Roe against Cherry-Burrell Corporation for personal injuries. Defendant's motion to take discovery depositions of plaintiff's expert witnesses denied. Defendant appeals. Reversed and remanded with instructions.

*O'Brien, Skehan & Bos,* for plaintiff.

*Foster, Campbell, Lindemer & McGurrin (John L. Collins,* of counsel), for defendant.

Before: LEVIN, P. J., and HOLBROOK and BRONSON, JJ.

Levin, P. J. This is a product liability case. The plaintiff, Joseph B. Roe, suffered personal injuries that he claims were caused by a defect in a device manufactured by the defendant, Cherry-Burrell Corporation. The trial judge ruled that the defendant could not take discovery depositions of plaintiff's expert witnesses. The defendant appeals on leave granted. We reverse.

The complaint alleges that the plaintiff, while in the course of his employment and while inspecting and examining a super-plate heat exchanger in operation, suffered widespread first, second, and third-degree steam burns when a clamp released of its own accord spraying super-heated water. He alleges that the design, manufacture, and testing of the clamp was defective and charges the defendant, the manufacturer of the clamp, with negligence and breach of express and implied warranties.

In response to interrogatories, the plaintiff indicated[1] that he intended to call as expert witnesses Dr. David Kahn, a physician, and Professor R. T. Hinkle. The judge declined to order the taking of their depositions on the ground that Dr. Kahn was not a treating physician and Professor Hinkle did not witness the accident. He cited *Lindsay* v. *Lipson* (1962), 367 Mich 1, where the Michigan Supreme Court held that the findings of a physician upon a physical examination of a litigant were not protected by the physician-patient privilege, because the physician was not a "treating" physician,[2] but were protected by the attorney-client privilege.[3]

---

[1] On appeal the plaintiff attempted to controvert this impression, but it is confirmed by his answer to the motion for discovery. In this connection see fn 4 and accompanying text.

[2] See MCLA § 600.2157 (Stat Ann 1962 Rev § 27A.2157). In *Lindsay* the litigant's attorney, as part of his preparation for trial, suggested to his client that she be examined by the physician and that he report his findings to the attorney.

[3] In *Lindsay* the Court declared that a communication concern-

In the *Lindsay* case, however, the physician was not called as a witness by the patient-client, but, rather, by his adversary. In this case the defendant claims it is entitled to depose Dr. Kahn and Professor Hinkle because the plaintiff-patient-client has indicated that he intends to call them as witnesses at the trial.

The court rules do not contain an express provision concerning the deposing of an opponent's expert witness. In terms they permit a party to take the deposition of "any person". GCR 1963, 302.1. The plaintiff, nevertheless, maintains that experts may not be deposed either because of the attorney-client or the physician-patient privilege or the "work product" restriction.

The plaintiff's claims of privilege are mooted by GCR 1963, 302.2, which provides that if a party claims a privilege at the taking of a deposition he may not at the trial offer the testimony of the witness pertaining to the evidence objected to in the deposition.[4] The plaintiff's choice is clear; he may either claim the privilege or allow the physician to be deposed, and under the court rule he can be put to a choice in advance of trial, at the time the defendant seeks to depose Dr. Kahn and Professor Hinkle.[5]

---

ing a patient's condition by a physician who examined her to her attorney is a communication by the patient-client to the attorney through the agency of the physician.

[4] "If a party claims privilege on the part of the testimony of a witness at the taking of the deposition and the witness is not required to answer the question, the party claiming the privilege may not at the trial offer the testimony of the witness pertaining to the evidence objected to at the deposition." 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), Rule 302.2(1), p 40.

[5] We do not mean to be understood as reaching the question of whether the failure to assert the privilege at the time of taking a physician's deposition bars assertion of the privilege by the patient at the time of trial. See *Eberle* v. *Savan Food Stores, Inc.* (Docket No. 7888, decided Feb. 16, 1971).

The work product restriction is embodied in GCR 1963, 306.2.[6] The plaintiff argues that if an expert's written report is protected work product discoverable under Rule 306.2 only upon a showing of adequate cause and unfair prejudice or undue hardship or injustice,[7] it would be illogical to allow an expert freely to be deposed at length regarding the subject matter of his report. There is, however, an obvious difference between requiring production of a report, which need not be introduced at the time of trial, and deposing a witness whom a party says he will call at the trial. Discovery of a witness who will testify at the trial simply advances the stage at which disclosure takes place.[8]

The Federal courts have divided on the question. The early cases tended to hold that a party could not take the deposition of his adversary's expert witness.[9] More recently the trend of opinion moved in the opposite direction.[10] Among the recent

[6] "The court shall not order the production or inspection of any writing prepared by the adverse party, his attorney, surety, indemnitor, or agent in anticipation of litigation or in preparation for trial unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice. The court shall not order the production or inspection of any part of the writing that reflects an attorney's mental impressions, conclusions, opinions, or legal theories." 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), Rule 306.2, 1969 Supp p 21.

[7] See Powers v. City of Troy (1970), 28 Mich App 24.

[8] See Bergstrom Paper Co. v. Continental Insurance Co. of City of New York (ED Wis, 1947), 7 FRD 548, 550, quoting Hickman v. Taylor (1947), 329 US 495, 507 (67 S Ct 385, 91 L Ed 451). The opinion and conclusion of an expert are evidence in themselves, and may, indeed, be the principal evidence by which the issues of the case are determined. Such opinions and conclusions are "facts" of the case (see fn 15, infra, and accompanying text) and are discoverable. See United States v. Meyer (CA 9, 1968), 398 F2d 66, 72, 73.

[9] 4 Moore's Federal Practice, ¶ 26.66[1], pp 26–463–465.

[10] 4 Moore's Federal Practice, ¶ 26.66[1], p 26–479, et seq.; United States v. 23.76 Acres of Land (D Md, 1963), 32 FRD 593; Knighton v. Villian & Fassio e Compagnia Internazionale di Genova Societe Riuniti di Navigazione, Spa (D Md, 1965), 39 FRD 11, 13; Franks

amendments to the Federal discovery rules made effective July 1, 1970, is the adoption of a new rule, 26(b)(4),[11] which provides that by means of interrogatories a party may be required to identify each person whom he expects to call as an expert witness at trial and "to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion". Means are also provided whereby a party may, subject to certain limitations, upon order of the court, take the expert's deposition orally. The advisory committee note explains:

"Effective cross-examination of an expert witness requires advance preparation. The lawyer even with the help of his own experts frequently cannot anticipate the particular approach his adversary's expert will take or the data on which he will base his judgment on the stand. * * * Similarly, effective rebuttal requires advance knowledge of the line of testimony of the other side.

"These considerations appear to account for the broadening of discovery against experts in the cases cited where expert testimony was central to the case."[12]

While we do not have a rule corresponding to the new Federal rule, we are persuaded of the soundness of the reasoning of the more recent Federal

v. *National Dairy Products Corporation* (WD Tex, 1966), 41 FRD 234. *Cf. Meese* v. *Eaton Manufacturing Company* (ND Ohio, 1964), 35 FRD 162, and *Empire Scientific Corp.* v. *Pickering & Company, Inc.* (ED NY, 1968), 44 FRD 5, observing that the early view that "opinions", as distinguished from "facts", are not discoverable had fallen into disfavor.

Similarly, see *Sanford Construction Company, Inc.* v. *Kaiser Aluminum & Chemical Sales, Inc.* (ED Ky, 1968), 45 FRD 465; *Broadway & Ninety-Sixth Street Realty Company* v. *Loews, Incorporated* (SD NY, 1958), 21 FRD 347, 359; *Security Industries, Inc.* v. *Fickus* (Alaska, 1968), 439 P2d 172.

[11] Reprinted 48 FRD 459, 462.

[12] Advisory Committee Note, reprinted 48 FRD 487, 503, 504.

cases (see fn 10) which, independently of the new rule, allowed a litigant to depose his adversary's expert witness.

In a product liability case both parties, in order properly to prepare for trial, need to know before the trial the bases upon which their opponent's expert witnesses entertain their opinions concerning the defectiveness *vel non* of the device. And, where personal injuries have been suffered, they need to know the bases upon which their opponent's medical experts entertain their opinions.[13]

There are many issues of triable fact that are ordinarily provable only by opinion testimony;[14] in such a case the opinion adopted by the trier of fact becomes the adjudicated fact.[15] Whenever experts are called, their opinions become contested "facts" and "the groundwork for those opinions comes within the ambit of a proper search for facts beyond the knowledge of the moving party."[16]

It has been observed that "before an attorney can even hope to deal on cross-examination with an unfavorable expert opinion he must have some idea of the bases of that opinion and the data relied upon. If the attorney is required to await examination at trial to get this information, he often will have too little time to recognize and expose vulnerable spots in the testimony. He may need advice of his own experts to do so and indeed, in certain cases, his experts might require time

---

[13] *Cf. Klabunde* v. *Stanley* (1969), 16 Mich App 490.

[14] *E.g.*, the value of property or services, damages generally, whether a device is defective, the extent and permanency of personal injury and many more.

[15] Professor McCormick observed in another context that the notion that " 'fact' and 'opinion' stand in contrast and hence are readily distinguishable * * * is clumsy because its basic assumption is an illusion." McCormick on Evidence, § 11, p 22.

[16] *E. I. Du Pont de Nemours & Company* v. *Phillips Petroleum Company* (D Del, 1959), 24 FRD 416, 421.

to make further inspections and analyses of their own."[17]

Pretrial disclosure of an opponent's experts is necessary "if the parties are to fairly evaluate their respective claims for settlement purposes, determine the real areas of dispute, narrow the actual issues, avoid surprise, and prepare adequately for cross-examination and rebuttal." *United States* v. *Meyer* (CA 9, 1968), 398 F2d 66, 69.

Nothing is gained by shielding experts from pretrial discovery except surprise of the adversary and delay at the trial as the attorney for the adversary seeks, hurriedly under trial pressure, to prepare his response.

There need be little concern that a lazy litigant might attempt to rely on his opponent's expert.[18] "A party must as a practical matter prepare his own case  *  *  *  , for he can hardly hope to build his case out of his opponent's experts."[19]   A litigant has no cause for complaint if his case is so weak that his adversary can prevail on cross-examination.

Plaintiff contends that it is unfair for a party to obtain without expense information from an expert hired by his opponent.   However, Rule 306.2 provides the court with comprehensive power to enter protective orders regulating the taking of depositions.   Before allowing an expert's deposition to be

---

[17] Friedenthal, Discovery and Use of an Adverse Party's Expert Information, 14 Stan L Rev 455, 485 (1962).

*Cf. Wilson* v. *Saginaw Circuit Judge* (1963), 370 Mich 404, 411, where the Michigan Supreme Court observed:   "[T]he ultimate objective of pretrial discovery is to make available to all parties in advance of trial all relevant facts which might be admitted in evidence at trial."

[18] In *Southern Railway Company* v. *Lanham* (CA5, 1968), 403 F2d 119, the United States Court of Appeals for the Fifth Circuit observed (p 130):   "Our role in administering the discovery rules, however, is not to reward diligence or to penalize laziness."   Similarly see *United States* v. *Meyer* (CA9, 1968), 398 F2d 66, 75.

[19] Advisory Committee Note, reprinted 48 FRD 487, 504.

taken, a judge may require the deposing party to pay the expert for his time.[20]

Nor do we find any merit in plaintiff's alternative contention that the defendant's request to take the depositions came too late. The plaintiff relies on the amendment to GCR 1963, 301, which added, effective February 1, 1967, subsection 7 providing that, "No discovery proceedings shall be conducted after completion of the pretrial conference * * * unless subsequently ordered by the court on written motion for good cause shown."

There was a pretrial conference on May 8, 1967. The pretrial summary states that no depositions had been taken and that "both sides reserve the right to take depositions." Depositions of several persons were taken by both the plaintiff and the defendant after the pretrial.

The case was scheduled to be tried on April 8, 1968. When settlement negotiations collapsed in early March 1968, the defendant sought to take Dr. Kahn's deposition and when the plaintiff refused to permit this the defendant, on March 26, 1968, moved for an order allowing him to take the depositions of both Dr. Kahn and Professor Hinkle.

The motion was denied on its merits, not because of the late date on which it was filed or the proximity of that date to the trial date. There is no suggestion that in denying the defendant's motion the judge relied on the provisions of Rule 301.7 limiting the time for taking discovery depositions.[21]

Because the pretrial summary expressly reserved the right to each of the parties to take depositions

---

[20] *Cf. Henlopen Hotel Corporation* v. *Aetna Insurance Company* (D Del, 1963), 33 FRD 306; *United States* v. *23.76 Acres of Land* (D Md, 1963), 32 FRD 593, 597.

[21] *Cf. Guastello* v. *Citizens Mutual Insurance Company* (1968), 11 Mich App 120, where we said that the court rules should not be read rigidly and that in many cases the judge enjoys a dispensing power.

after the pretrial conference and each of the parties availed himself of that right, the plaintiff may not be heard to rely on GCR 1963, 301.7 as a ground for denying the defendant an opportunity to take the deposition of the expert witnesses the plaintiff intends to call at the trial.

Reversed and remanded for the entry of an order consistent with this opinion; upon entry of the order the court may direct that the defendant shall deposit, before any depositions are taken, sums to be paid to the expert witnesses and otherwise provide for the protection of the plaintiff against oppression. No costs.

All concurred.

### On Application for Rehearing

An application for rehearing was filed by the plaintiff-appellee, considered by the Court and denied. Judge Holbrook dissented from the denial of the application for rehearing because in his opinion such a rehearing is justified in the light of *Klabunde* v. *Stanley* (1970), 384 Mich 276, decided December 30, 1970, after our Court's opinion was filed in this case.

Judges Levin and Bronson are of the opinion that the reasoning of the Supreme Court in *Klabunde* is not inconsistent with the reasoning reflected in the opinion previously filed in this case and that *Klabunde* does not oblige us to reach a different result. In further explication of their views, Judges Levin and Bronson add the following:

The attorney-client privilege and the work product restriction protect and promote an underlying premise upon which our system of administering justice is based, namely that disclosure of the truth and the correct determination of the justice of the

matter is more likely to be accomplished in an adversary—as contrasted with an inquisitorial—hearing. But even in an adversary system the litigants must disclose their hands at some time. The issue then is when?

Advance disclosure facilitates preparation for trial and realistic appraisal by both sides of the strengths and weaknesses of their cases. It promotes settlements. It shortens the time required to try a case.

Requiring a litigant to disclose the witnesses he may call and allowing his opponent to depose those witnesses may, indeed, forewarn of the disclosing litigant's otherwise secret strategy and of the strengths and weaknesses of the case. Under a crystal pure adversary system this would not occur until the trial. We are satisfied, however, that requiring such disclosure will not undermine the adversary system, and this we note is the judgment of those who framed the new Federal rules based on the experience in the many jurisdictions where the practice for some time has been to require such disclosure and to allow the taking of the depositions of the provisional list of witnesses.

If surprise is eliminated the trial will better reflect the true strengths of the conflicting claims. The adversary system is valued not for the contest but because it is believed truth will survive and emerge from the clash of competing presentations. The greatest of champions may be felled by an unforeseen blow. The more complete the advance disclosure, the greater the likelihood that the true merits will be hammered out at the trial.

Pretrial discovery is time consuming and can be costly. It can be abused, and trial judges should be quick to relieve against harassment in the name of discovery. It should also be recognized, however,

that uncertainty whether discovery will be compelled encourages litigants to resist discovery until they are obliged to submit.   Properly employed, discovery conserves judicial resources—by facilitating settlement and by shortening the time it takes to try a case properly prepared for trial.   Much of what is laboriously brought out during a trial could be covered by stipulation based on the results of pretrial discovery; by narrowing the disputed issues, this would increase the impact of the competing presentations on the points in dispute.

It seems to us, having in mind the clogged dockets of our trial courts, that the interest in shortening the interval between the commencement of an action and adjudication requires not only that we allow litigants to require disclosure of the other side's case in advance of trial, but further that in some cases it is the duty of the trial court to insist that the parties employ these and ancillary techniques in an effort to expedite the trial process and to reduce the backlog.

There is no need to leave the resolution of the question before us to the murky area of trial judge discretion.   Only those questions for which it is not possible to devise a rule of law generally applicable are properly left to unregulated discretion.* If a rule can be stated, one way or another, then the choice should be responsibly made and the decision should be uniformly implemented—the question should no longer depend on the personal predilections of the sitting judge.

It seems to us clear that the sound choice is to require disclosure of the names of prospective witnesses and to allow (and in some cases to require) that their depositions be taken in advance of trial

---

* See *Noonan* v. *Cunard Steamship Co., Ltd.* (CA2, 1967), 375 F2d 69, 71.

with a view to narrowing the issues, promoting settlement and expediting the trial of those cases that are not settled.

The adversary system will not survive unless it works. It is now bogged down. Proposals are pouring in to eliminate more and more of the traditional business of the courts and to substitute administrative or quasi-judicial determinations. Many favor the elimination of jury trial in all or some cases. Those who insist on retaining all the features of the practice in a more leisurely age elide the absolute necessity of developing and using new techniques to protect and preserve the workability of the essentials of our adversary system.