DANIELS v ALLEN INDUSTRIES, INC

OPINION OF THE COURT

1. DISCOVERY—DISCOVERY OF DOCUMENTS—GOOD CAUSE—COURT
RULES—EVIDENCE—DISCRETION.

The judicial "good cause" prerequisite for discovery, under a
court rule providing for discovery and production of documents
and things for inspection, copying or photographing, does not
require that the objects sought to be discovered be admissible
in evidence and a trial judge is not within his discretion in
requiring such admissibility as a predicate to allowing discov-
ery (GCR 1963, 310).

2. DISCOVERY—PUBLIC POLICY—POLLUTION CONTROL STUDIES.

Public policy considerations do not compel barring discovery of
pollution control studies commissioned by industries because
fear of such disclosure might discourage voluntary anti-pollu-
tion studies and programs by industry.

3. DISCOVERY—COURT RULES—CONSTRUCTION.

Michigan has a strong historical commitment to a far-reaching,
open and effective discovery practice; discovery rules are to be
liberally construed in order to further the ends of justice.

4. DISCOVERY—DISCOVERY OF DOCUMENTS—COURT RULES—GOOD
CAUSE—DISCRETION.

Michigan Supreme Court has clarified the import of the court
rule providing for discovery and production of documents and
things for inspection, copying, or photographing, noting the
necessity for a showing of "good cause" by the moving party
before such party is entitled to put the issue of document
production to the trial court for exercise of its discretion (GCR
1963, 310).

REFERENCES FOR POINTS IN HEADNOTES

[1, 4–6, 11, 12] 23 Am Jur 2d, Depositions and Discovery §§ 296, 297.
[2, 7, 10] 61 Am Jur 2d, Pollution Control § 118.
[3] 23 Am Jur 2d, Depositions and Discovery §§ 256–267.
[8, 9] 23 Am Jur 2d, Depositions and Discovery § 152.
[13] 23 Am Jur 2d, Depositions and Discovery §§ 149, 164, 210.

5. DISCOVERY—DISCOVERY OF DOCUMENTS—GOOD CAUSE—EVIDENCE— TRIAL PREPARATION—COURT RULES.

The standard, that "good cause," must be shown, under a court rule providing for discovery and production of documents and things for inspection, copying, or photographing is satisfied when the moving party demonstrates that the information sought is or might lead to admissible evidence, *is material to the moving party's trial preparation,* or is for some other reason necessary to promote the ends of justice (GCR 1963, 310).

6. DISCOVERY—DISCOVERY OF DOCUMENTS—GOOD CAUSE—TRIAL PREPARATION—EVIDENCE—APPEAL AND ERROR.

Plaintiffs can establish or have established good cause entitling them to discovery, if they can factually support or have factually supported, on their motion for production of documents, allegations of the materiality of those documents for trial preparation; the trial court was in error in denying document discovery on the basis of lack of evidentiary admissibility.

7. DISCOVERY—DISCOVERY OF DOCUMENTS—POLLUTION STUDIES—PUBLIC POLICY.

Denial of plaintiff's motion for discovery of defendant-manufacturer's pollution control studies commissioned by industries advanced on a public policy reason by the trial court because, permitting discovery would discourage voluntary anti-pollution studies and programs on the part of industry, cannot be endorsed because a manufacturer whose operations pollute the environment would, if discovery were allowed in this situation, face two alternatives; he could choose to do nothing regarding the undesirable side effects of his operation, and expose himself to continued and protracted litigation, or he could attempt to ameliorate and hopefully eliminate those side effects and eventually end litigation of this nature; the latter alternative is obviously superior even though it would admittedly have a short term side effect of facilitating a plaintiff's task in litigation of this nature.

8. DISCOVERY—EXPERT REPORTS—COURT RULES.

Expert reports prepared in the course of litigation are excluded from discovery, under a court rule providing for discovery and production of documents and things for inspection, copying, or photographing, by virtue of the prohibition of a section of another court rule (GCR 1963, 306.2, 310).

9. DISCOVERY—DISCOVERY OF DOCUMENTS—SUBSEQUENT REPAIRS—EVIDENCE—EMISSION CONTROL—COURT RULES.

The subsequent repairs evidentiary exclusion doctrine is not applicable to an application for discovery of certain letters, reports and other documents prepared prior to litigation by expert consultants employed by defendant to study an emission control situation at defendant's plant under a court rule providing for discovery and production of documents and things for inspection, copying or photographing (GCR 1963, 310).

10. DISCOVERY—DISCOVERY OF DOCUMENTS—PUBLIC POLICY—POLLUTION INVESTIGATION—APPEAL AND ERROR.

Trial court was in error in barring discovery because there is neither legal nor policy ground supporting denial of documentary discovery on the basis of defendant's public policy argument that if discovery of a pollution investigation conducted, not in preparation or contemplation of litigation, is permitted it is *not* likely that private resources will undertake programs aimed at ameliorating pollutant conditions.

11. DISCOVERY—DISCOVERY OF DOCUMENTS—DISCRETION—COURT RULES—APPEAL AND ERROR.

Trial court had discretion under a court rule providing for discovery and production of documents and things for inspection, copying or photographing, to determine whether the *facts* placed before it were sufficient under the *law* to entitle plaintiffs to the benefit of that court rule; such standard of discretion relates to judgment on the *facts* not on the *law,* where appellate courts must exercise their judgment (GCR 1963, 310).

12. DISCOVERY—DISCOVERY OF DOCUMENTS—GOOD CAUSE—COURT RULES—DISCRETION—APPEAL AND ERROR.

The legal question as to the standard for "good cause", under a court rule providing for discovery and production of documents and things for inspection, copying or photographing, is not subject to the discretionary predilections of individual judges; such a holding would demolish entirely the appellate system of review insulating errors of law from just and appropriate scrutiny on appeal (GCR 1963, 310).

CONCURRING OPINION

M. S. COLEMAN, J.

13. DISCOVERY—DISCOVERY OF DOCUMENTS—DISCRETION—EVIDENCE.
*To grant broad discovery for "cause shown" is within the trial*

*judge's discretion and the exercise of this discretion is not
limited to documents or objects admissible in evidence.*

Appeal from Court of Appeals, Division 1, V. J.
Brennan, P. J., and Quinn and Bronson, JJ., af-
firming Wayne, Michael L. Stacey, J. Submitted
December 4, 1973. (No. 2 December Term 1973,
Docket No. 54,549.) Decided April 16, 1974.

43 Mich App 726 reversed.

Complaint by Beatrice Daniels and Mary Felder
for themselves and on behalf of all other persons
similarly situated, against Allen Industries, Inc., to
enjoin operation of defendant's manufacturing
plant as a nuisance and for damages. Plaintiffs'
pretrial motion for production by defendant of
certain documents denied. Plaintiffs appealed by
leave granted to the Court of Appeals. Affirmed.
Plaintiffs appeal. Reversed and remanded to the
trial court.

*Miller, Canfield, Paddock & Stone* (by *Charles L.
Burleigh, Jr.),* for plaintiffs.

*Honigman, Miller, Schwartz & Cohn* (by *Robert
A. Fineman),* for defendant.

WILLIAMS, J. This air pollution class action case
raises three questions:

(1) Does the judicial "good cause" prerequisite
for GCR 1963, 310 discovery require that the
objects sought to be discovered be admissible in
evidence?

(2) Is a trial judge within his discretion in re-
quiring such admissibility as a predicate to allow-
ing discovery?

(3) Do public policy considerations compel bar-
ring discovery of pollution control studies commis-

sioned by industries because fear of such disclosure might discourage voluntary anti-pollution studies and programs by industry?

We answer all three questions in the negative.

## I —FACTS

On July 31, 1970, plaintiffs brought a nuisance action in Wayne County Circuit Court seeking injunctive relief and damages arising out of defendant's Leland Plant's alleged air and noise pollution and presentation of a fire hazard. Plaintiffs live directly across the street from the Leland Plant and claim to represent additionally a similar class of neighboring property-owners. The Leland Plant is involved primarily in the manufacture of automotive seating, cushioning, and padding in the City of Detroit.

On July 2, 1971, plaintiffs filed a motion for production of documents under GCR 1963, 310 seeking discovery of certain letters, reports, and other documents prepared prior to this litigation in 1968, 1969, and 1970 by expert consultants employed by defendant to study the Leland Plant's emission control situation. Plaintiffs learned of the existence of these documents through interrogatories answered by defendant on June 8, 1971.

After submission of briefs and presentation of oral argument, the trial court denied the motion for production of documents by interlocutory order in a lengthy opinion handed down from the bench September 2, 1971, and in its order of September 24, 1971. The court based its denial primarily upon the fact that the requested documents would not be admissible in evidence. The trial court further observed:

"It would appear in the instant matter, however, that

Defendants do not intend to use at trial, either the reports sought by Plaintiffs or the testimony of those who prepared the reports. The effect of allowing discovery in this instance would be to assist Plaintiffs in building their claims as opposed to permitting litigants to adequately prepare for testimony to be given at trial."

Secondarily, the court held that discovery in this case was not within the public interest for it would tend, as defendant urged, to discourage pollution control programs necessitating the documentation of evidence which could later be used against the entity which solicited the reports.

The Court of Appeals affirmed the trial court 2–1 on November 28, 1972. 43 Mich App 726; 204 NW2d 726 (1972). The two-judge majority, in a brief five-paragraph opinion, resolved this case entirely on the issue of trial court discretion. Finding no abuse of that discretion, the majority affirmed. Judge V. J. Brennan dissented in an opinion which we essentially follow today.

This Court granted leave to appeal on April 30, 1973. 389 Mich 788 (1973).

## II —IS EVIDENTIARY ADMISSIBILITY PREREQUISITE TO GCR 1963, 310 DISCOVERY?

It should first be noted that Michigan has a strong historical commitment to a far-reaching, open and effective discovery practice. In light of that commitment, this Court has repeatedly emphasized that discovery rules are to be liberally construed in order to further the ends of justice. *Hallett v Michigan Consolidated Gas Co,* 298 Mich 582, 586; 299 NW 723 (1941); *Scarney v Clarke,* 276 Mich 295, 303; 267 NW 841 (1936); *Vincent v VanBlooys,* 263 Mich 312, 314–315; 248 NW 633 (1933).

The portion of Rule 310 relevant to the instant appeal reads as follows:

"Rule 310. Discovery and Production of Documents and Things for Inspection, Copying, or Photographing

".1 Power of the Court. After commencement of an action the judge of the court in which the action is pending may, upon motion of any party and upon notice to all other parties, and subject to the provisions of subrule 306.2:

"(1) order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any reasonably designated documents, papers, books, accounts, letters, photographs, objects, or tangible things, not privileged, relevant to the subject matter involved in the pending action and which are in his possession, custody, or control; * * * "

The relevant portion of Rule 306.2 reads as follows:

"The court shall not order the production or inspection of any writing prepared by the adverse party, his attorney, surety, indemnitor, or agent in anticipation of litigation or in preparation for trial unless satisfied that denial or production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice, except as provided in sub-rule 310.1(4). The court shall not order the production or inspection of any part of the writing that reflects an attorney's mental impressions, conclusions, opinions, or legal theories."

Rule 310 literally appears to give plaintiffs an unlimited discovery right to relevant, non-privileged documents subject only to the protective provisions of Rule 306.2 and trial court discretion. But Rule 310 has been subject to significant judicial construction. In light of the mandate for a

liberal construction in order to further the ends of justice, this Court has clarified the import of Rule 310 noting the necessity for a showing of "good cause" by the moving party before such party is entitled to put the issue of document production to the trial court for exercise of its discretion. *Covington Mutual Insurance Co v Copeland*, 382 Mich 109, 111–112; 168 NW2d 220 (1969); *J A Utley Co v Saginaw Circuit Judge*, 372 Mich 367, 375; 126 NW2d 696 (1964).[1]

In the instant case, the trial judge correctly imposed this "good cause" showing requirement upon the moving party, but, significantly, the court held additionally that "requisite 'good cause' is good cause in relation to answering or countering evidence or testimony to be used at trial". While it could have been interpreted more broadly, the quoted language became the troublesome fly in this discovery ointment, because the trial court proceeded to interpret this language to impose an evidentiary *admissibility* requirement upon plaintiffs moving under Rule 310.

But "good cause" under Rule 310 is clearly no longer governed by considerations of admissibility. On June 7, 1965, Rule 310.1(1) was amended, effective immediately, to explicitly eliminate, *inter alia,* the limitation on production of documents to those documents which, by reference to GCR 1963, 302.2, were "admissible under the rules of evidence". See 2 Honigman & Hawkins, Authors' Comment 4 to GCR 1963, 310. The trial judge in the instant case erroneously reimposed this deleted admissibility requirement. To accept such a conclusion would do great damage to the settled Michigan policy of encouraging full and open dis-

---

[1] "Good cause" is a common requirement prior to document production in other jurisdictions. *See* Annotation: *Discovery—Statements of Witnesses,* 73 ALR2d 12, § 35.

covery in order to narrow the range of disputed issues which might otherwise needlessly waste the parties' and judicial resources.

## III —GOOD CAUSE FOR GCR 1963, 310 DISCOVERY

While we have elucidated what Rule 310 does *not* require with respect to a showing of "good cause", the issue of what *is* required is more difficult. The question of the meaning of "good cause" in the Federal context, prior to elimination of that standard in 1970, was a subject of vigorous discussion and debate.[2] Without inserting ourselves into that now-mooted controversy at the Federal level, we do note with approval the analysis of one Federal court on this subject. In *Franks v National Dairy Products Corp,* 41 FRD 234 (WD Texas, 1966), a similar issue was before the court under Federal Rule 34, the Federal counterpart to Rule 310, when it had a "good cause" requirement.[3] Judge Fisher, after a scholarly review of the competing authority, held:

"[T]he requirement of Rule 34 that 'good cause' must be shown is satisfied when the moving party demonstrates that the information sought is or might lead to admissible evidence, *is material to the moving party's trial preparation,* or is for some other reason necessary to promote the ends of justice." 41 FRD 234, 238. (Emphasis added.)

This standard, we believe, is both just and

---

[2] *See* Federal Rules Digest (3d ed), § 34b.221; 4A Moore's Federal Practice (2d ed), § 34.08.

[3] For a good review of the history behind FRCP 34 and the reasons for the elimination of the "good cause" requirement in Federal practice where the moving party need not make his or her discovery request in court in the first instance, see 8 Wright & Miller, Federal Practice & Procedure, § 2201.

squarely in line with the judicial rationale behind imposition of a "good cause" requirement. It provides for extensive discovery in those actions where discovery presents the reasonable likelihood of providing the moving party with relevant and appropriate information. Thus we consider that the *Franks* standard quoted above is well-reasoned and we adopt it as an accurate statement of the meaning of "good cause" under Rule 310.

On this basis, we must look to the plaintiffs' showing in the instant case to determine whether or not they did in fact present the court with "good cause" sufficient to move that court to grant discovery.[4]

Plaintiffs' motion for production of documents gives a two-sentence rationale supportive of good cause:

"Such documents relate directly to the subject matter of the instant litigation since plaintiffs allege injuries resulting from defendant's air pollution. Said documents contain relevant material evidence which may be utilized in whole or in part by defendant at the trial of this case."

---

[4] Once "good cause" has been shown by the moving party, trial court discretion to bar discovery is not entirely unfettered. This precise point was discussed by Justice (then Judge) J. W. FITZGERALD in *Pearson v VanderWier*, 3 Mich App 41; 414 NW2d 685 (1965). In *Pearson,* plaintiffs sought Rule 310 discovery of a statement made by defendant's insurer following an automobile accident. Justice FITZGERALD held:

"Once the 'good cause' requirement of *Utley* has been satisfied, we feel that the trial court in the instant case had little latitude but to order the production of * * * [defendant's agent's] statement. Nonproduction of the statement is the gravamen of this appeal and left too many imponderables in this case * * * . While a motion filed with the court should not necessarily precipitate an order, we feel that the failure to supply a copy of the statement plus the clear issue of the credibility of * * * [defendant's agent], who was not a casual bystander, but rather the driver of the other vehicle, furnished sufficient grounds *to require* the trial court to order production of the statement." 3 Mich App 41, 49–50. (Emphasis added.)

*See also* on this point *Willard v Gaston,* 333 Mich 455, 461; 53 NW2d 332 (1952).

These succinct allegations in plaintiff's motion
well illustrate the apparent confusion which here-
tofore surrounded the "good cause" showing re-
quirement. Indeed, at first blush, one might well
have interpreted the last sentence of plaintiffs'
allegation, read in conjunction with the first sen-
tence, as implying that plaintiffs were seeking
document discovery in order to obtain *evidence to
be introduced at trial.*

But the opinion of the trial court demonstrates
that plaintiffs' arguments at the hearing on their
motion clearly alleged the materiality of these
documents to plaintiffs' *trial preparation.* As the
court capsulized plaintiffs' arguments:

"Plaintiffs seek production of certain studies and
other documents prepared by Defendant's Air Pollution
Control Consultants in order for Plaintiffs *to prepare
their case for trial,* particularly in proving injury to
Plaintiffs by defendant's alleged pollution, and for the
necessary information to ascertain the class of Plaintiffs
injured by the alleged nuisance. Plaintiffs further claim
that the documents prepared were not prepared in
connection with the instant litigation, present an analy-
sis of the magnitude of the problem, the consequence of
continuing the *[sic]* maintain the alleged nuisance, and
the alternatives to solve the problem, if any." (Empha-
sis added.)

Plaintiffs' allegations from the foregoing are
therefore clearly within the *Franks* rule which we
have adopted.

If plaintiffs can factually support (or have factu-
ally supported) these allegations of the materiality
of these documents for trial preparation they can
establish (or have established) good cause entitling
them to discovery. The trial court was in error in
denying document discovery on the basis of lack of
evidentiary admissibility.

## IV —THE PUBLIC POLICY ISSUE

### A. The "Deterrence" Argument

Plaintiffs also contended below that the public policy in favor of broad, effective discovery practice and the public policy in favor of private litigation aimed at obtaining environmental relief arising out of the Environmental Protection Act of 1970, MCLA 691.1201 *et seq.;* MSA 14.528(201) *et seq.,* give further strength to their "good cause" arguments under Rule 310.[5]

But, conversely, defendant argued and the trial court agreed that competing considerations of public policy gave rise to the opposite conclusion that discovery in these circumstances should be barred. The trial court held:

"If discovery of such investigation conducted, not in preparation or contemplation of litigation, is permitted, despite Plaintiffs' protestations to the contrary, it is *not* likely that private resources will undertake programs aimed at ameliorating pollutant conditions; for to do so, they would have to document evidence that might be used against them during litigation. In effect, they would be preparing a Plaintiffs' case against themselves which could actually be used to oppose their own defense, should indeed litigation arise out of the matter.

---

[5] Plaintiffs also advanced a third "good cause" argument below, namely that they are indigent and lack the necessary resources to commission such studies. The trial court ruled:

"This Court is, however, concerned about the allegation of Plaintiffs that Plaintiffs are indigent and are unable to afford the type of investigation required to make such a determination [of the type and amount of pollutants]. We are, however, not persuaded at this point that the Defendant is a proper person to, in effect, provide the funding necessary to encourage litigation against itself."

We do not discuss this issue in depth as the discussion in Section IV of this opinion demonstrates that defendant's policy argument, as repeated in this context, must fall. It should be noted though that we are talking about actual data accumulated in 1968–1970. It is difficult to surmise how the plaintiffs could reproduce such data regardless of expense.

"To permit such documents, prepared not for trial, but rather to assist private resources to resolve pollution problems would be to discourage efforts to resolve such problems. Such a result would not be in the public's interest."

We concur in the able analysis of Judge V. J. Brennan siding with plaintiffs in dissenting on this issue in the Court of Appeals:

"Finally, the court advanced a public policy reason for the denial of discovery. The court below felt that permitting discovery in this instance would discourage voluntary anti-pollution studies and programs on the part of industry. The discouragement would stem from the polluter's knowledge that such a study could be discovered and used to facilitate a cause of action for damages against him. Again, I cannot endorse the reasoning of the trial court. A manufacturer whose operations pollute the environment would, if discovery were allowed in this situation, face two alternatives. On the one hand he could choose to do nothing regarding the undesirable side effects of his operation, and expose himself to continued and protracted litigation. On the other hand he could attempt to ameliorate and hopefully eliminate those side effects and eventually end litigation of this nature. In my opinion, the latter alternative is obviously superior even though it would admittedly have the short term side effect of facilitating a plaintiff's task in litigation of this nature." 43 Mich App 726, 733.

Judge V. J. Brennan has thus skillfully grasped the nettle of this difficult and thorny conflict of strong competing policy arguments and has resolved the issue in a pithy but well-reasoned and practical manner. One might only add in answer to defendant's argument that the best policy is voluntary industry pollution abatement, that, while such policy might be "ideal", the Legislature in enacting the Environmental Protection Act has

made a realistic policy decision that the stimulus of possible litigation is now practically necessary to expedite what the ideal of *laissez-faire* has been too slow in accomplishing.[6]

## B. The "Subsequent Repairs" Argument

Defendant contends that the doctrine of inadmissibility of subsequent repairs bars discovery of these reports. Defendant cites for this proposition the Michigan cases of *Moon v Pere Marquette R Co,* 143 Mich 125; 106 NW 715 (1906); *LaDue v Lebanon Twp,* 222 Mich 301; 192 NW 636 (1923); *Thirlby v Mandeloff,* 352 Mich 501; 90 NW2d 476 (1958); and *People v Gill,* 247 Mich 479; 226 NW 214 (1929).

*Thirlby* and *Gill* are entirely inapposite to the instant case in that they involve admission into evidence of settlement offers. 352 Mich 501, 505; 247 Mich 479, 480. Such offers arise in the course of litigation. Expert reports prepared in the course of litigation are excluded from Rule 310 discovery by virtue of the Rule 306.2 prohibition.

*Moon* is a case involving admission of a change of safety rules after an accident; *LaDue* involves subsequent repairs. In both cases, evidence was found *inadmissible at trial* because of the danger of unfairly influencing the jury. 143 Mich 125, 127–128; 222 Mich 301, 305–306. The issue of trial admissibility is not before us. We are concerned only with the issue of whether these documents are suitable for discovery purposes, not whether they can be placed in evidence before a judge or jury. While we do not express an opinion on the continued viability of the subsequent repairs evi-

---

[6] "The EPA is a small but significant affirmation of confidence in the citizen." Sax and Conner, *Michigan's Environmental Protection Act of 1970: A Progress Report,* 70 Mich L Rev 1004, 1081 (1972). Co-author Joseph L Sax was draftsman of EPA.

dentiary exclusion doctrine, we hold that it is not applicable to the instant discovery application.[7]

## C. Summary

Again, we strongly reaffirm our clear public policy favoring a broad and effective pretrial discovery. All of the preceding policy and legal arguments must be viewed in light of that overriding concern.

Thus, we hold that the trial court was in error in barring discovery in the instant case on the basis of defendant's policy argument. There is neither legal nor policy ground supporting denial of document discovery on that basis.

## V —THE ISSUE OF DISCRETION

Defendant contends that whether or not the trial judge erred in refusing production of these documents is not dispositive of this appeal as the matter is one of trial court discretion and plaintiffs here have not demonstrated abuse of that discretion. As the standard for such abuse, defendants and the Court of Appeals majority below cite the following passage from *Spalding v Spalding*, 355 Mich 382, 384–385; 94 NW2d 810 (1959), a child support case:

"The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an 'abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity

---

[7] It should be noted in any case that the subsequent repairs doctrine has been held in many jurisdictions not to be unlimited. For a list of various exceptions carved into the general rule, *see* McCormick, Law of Evidence, § 252.

of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias."

The *Spalding* abuse of discretion standard relative to decision on the *facts* is not appropriate for use in all situations. *People v Charles O. Williams,* 386 Mich 565, 573; 194 NW2d 337 (1972). In *Spalding* the Court was using its judgment concerning the particular facts of record to enable it to make an appropriate discretionary ruling as to child support. The trial court in the instant case had discretion under Rule 310 to determine whether the *facts* placed before it were sufficient under the *law* to entitle plaintiffs to the benefit of Rule 310.

But more to the point, such standard of discretion relates to judgment on the *facts* not on the *law,* where appellate courts must exercise their judgment. Again, as judge V. J. BRENNAN succinctly observed in the Court of Appeals:

"By adopting the *Spalding* standard and applying it to this case, the majority has ignored the trial court's rationale for denying plaintiffs' motion for discovery. After reviewing that rationale I find that I disagree with the trial court's 'judicial opinion', but not with any of the trial court's conclusions regarding the facts of the case." 43 Mich App 726, 730.

It is obvious that the trial court ruling in the instant case was not based upon discretionary consideration of the facts but was based instead upon a misinterpretation of the applicable law. The legal question as to the standard for "good cause" is not subject to the discretionary predilections of individual judges. Such a holding would demolish entirely the appellate system of review insulating errors of law from just and appropriate

scrutiny on appeal. Thus, the legal errors in the instant case present solid grounds for reversal.[8]

## VI —CONCLUSIONS

For the reasons advanced in Sections II, III, IV and V of this opinion, *supra,* we hold that admissibility as evidence is not a factor to be considered by the trial court in exercising its discretion whether or not to grant GCR 1963, 310 document discovery, we adopt the rule in *Franks* which *inter alia* holds "good cause" exists where "the information sought * * * is material to the moving party's trial preparation", we hold further that defendant's policy argument, outlined *supra* in Section V, is not a bar to discovery, and we hold finally that the trial court's refusal to grant production of the documents was based on an error of law and thus was not a matter within the purview of judicial discretion.

The trial court order of September 24, 1971, denying production of these documents was erroneous and is hereby set aside. The trial court and Court of Appeals are reversed and the cause is remanded to Wayne County Circuit Court for pro-

---

[8] Note in this context the reasoning of Justice (then Judge) LEVIN in *Roe v Cherry-Burrell Corp,* 28 Mich App 42; 184 NW2d 350 (1970), a deposition discovery case where defendant attempted to depose the opposite party's expert witness. On rehearing, the point was made with respect to deposition discovery (GCR 1963, 302.1) that, in light of the aim of complete disclosure:

"There is not need to leave the resolution of the question before us to the murky area of trial judge discretion. Only those questions for which it is not possible to devise a rule of law generally applicable are properly left to unregulated discretion. If a rule can be stated, one way or another, then the choice should be responsibly made and the decision should be uniformly implemented—the question should no longer depend on the personal predilections of the sitting judge." (Footnote omitted.) 28 Mich App 42, 53.

ceedings not inconsistent with this opinion. Costs to plaintiffs-appellants.

T. M. Kavanagh, C. J., and T. G. Kavanagh and Levin, JJ., concurred with Williams, J.

M. S. Coleman, J. *(concurring).* I agree that it is within the trial judge's discretion to grant broad discovery for "cause shown". I also agree that the exercise of this discretion is not limited to documents or objects admissible in evidence and so I concur with the final result of the majority opinion.

Two aspects of this case are of concern to me, but one is not before the Court—the current proliferation of class actions. The other matter of concern is a policy which encourages an industry to assess and control its own pollution problems and then cause the result of its expenditures and labors to be turned like a knife against itself.

There is more than a likelihood that our decision will "heat up" class actions and "chill" good faith efforts to control pollution. I foresee a "chilling" of the engagement of expert consultants and engineers, of farsighted resolutions of boards of directors, of surveys and of the written sharing of ideas. None of this benefits the public interest.

There is something essentially wrong with a policy which demands large expenditures (around $828,000 in this case) to control pollution problems and then requires that same industry to produce its work product to be used against it in litigation concerning past pollution which that same work product has been designed to correct.

Ultimately, of course, the consumer pays the total cost.

Swainson and J. W. Fitzgerald, JJ., did not sit in this case.