Lowell EVANS and Thelma Evans,
Appellants (Plaintiffs Below),

v.

Royce HUSS, Jerome Schlieper, and Huss
& Schlieper, a partnership, Appellees
(Defendants Below),

Allison, Steinhart & Zook, Winamac Construction Company, Inc., a corporation, Fidelity and Deposit Company, Burrows Equipment Company, and Phillip Kruzick, Non-Participating Appellees (Defendants Below).

No. 2–479A105.

Court of Appeals of Indiana,
Second District.

Feb. 9, 1981.

---

Phillips, Phebus, Tummelson & Bryan, Urbana, Ill., Smith, Pearce, Barr & Howard, Noblesville, for appellants; Paul Smith, Noblesville, Joseph W. Phebus and Janet A. Flaccus, Urbana, Ill., of counsel.

Emerson Boyd, Julia M. Blackwell, Locke, Reynolds, Boyd & Weisell, Indianapolis, for appellees, Royce Huss, Jerome Schlieper, and Huss & Schlieper, a partnership.

Rocap, Rocap, Reese & Young, Cadick, Burns, Duck & Neighbours, Indianapolis, for non-participating appellees.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Lowell and Thelma Evans (the Evanses) appeal from an order by the Hamilton Su-perior Court that they pay part of the fees of an expert witness who was to testify on behalf of the defendants, Royce Huss, Jerome Schlieper, and their partnership, Huss & Schlieper (the partnership), the expert's deposition having been used in the Evanses' case-in-chief.

We affirm.

## FACTS

Lowell Evans was injured in the collapse of a grain elevator for which the partnership was one of the materialmen. He and his wife brought suit against a number of parties, including the partnership; the substance of that suit is not material to this appeal.

Both the Evanses and the partnership retained experts, whom they expected to call as witnesses at trial. In the course of discovery, the names of the experts became known to all parties, and by the time of trial, the partnership had deposed the Evanses' expert, and the Evanses had deposed the partnership's expert. This was not done pursuant to any court order. In each case, counsel sent a letter to opposing counsel requesting a deposition, and the request was honored. When the Evanses' expert was deposed, the five defendants, including the partnership, paid the expert a total of $569.42 for preparing for, responding to, and reading the deposition.

The process, at least in its earlier stages, was repeated, beginning August 28, 1978, when the Evanses' attorney sought to depose M. Dean Wurth, the partnership's expert. Notice of the deposition was sent to all parties on September 12, and the deposition was taken September 25. Wurth billed the partnership as follows: $410.00 for time and travel in responding to the deposition, including reading, correcting, and signing it; and $2,380.00 for computations and drawings which the partnership says were provided the Evanses by Wurth.

On September 29, the partnership filed a motion alleging that the Evanses intended to use Wurth's deposition and the materials

he provided at trial without compensating the partnership. The motion sought an order under Ind. Rules of Procedure, Trial Rule 26(B)(3) that the Evanses pay the partnership $2,790.00.[1]

Trial was held on the principal case from October 2 to October 12, 1978. At the end of the Evanses' case-in-chief, the partnership obtained judgment on the evidence. The partnership was thus never to call Wurth as a witness; but the Evanses had used his deposition during the presentation of their case.

The trial court noted this, and on December 4, ordered the Evanses to pay the partnership's attorneys the full amount of $2,790.00.

## ISSUES

The Evanses enumerate five issues in this case, which we consolidate into two questions:

1. When a party deposes his opponent's expert under an informal procedure, without benefit of an order under TR. 26(B)(3)(a), may the opponent seek an order under TR. 26(B)(3)(c) for the deposing party to defray the expert's fees?

2. Was the evidence sufficient to support the trial court's award of $2,790.00 to the partnership?

## PARTIES' CONTENTIONS

The Evanses note that the only possible source of the trial court's authority to assess expert witness fees is TR. 26(B)(3)(c);[2] but since the language relating to the payment of expert witness fees refers to "discovery permitted under subdivision (B)(3)(a) of" Rule 26, an order for the payment of fees should be available only in advance of the discovery, and only pursuant to an order issued under Rule 26(B)(3)(a). That being the case, the most the trial court could have awarded the partnership would be the amount of "a reasonable fee for *time* spent in responding to discovery," an amount which is indisputably less than $2,790.00. Further, the Evanses argue that even if they are liable for a portion of Wurth's fees, the trial court's order was based on so little evidence as to amount to an abuse of discretion.

The partnership responds that the narrow reading which the Evanses propose for TR. 26(B)(3)(c) would sharply curtail a trial court's discretion to deal with instances like this, in which parties have attempted to manage discovery informally without intervention of the trial court. The partnership says that it did not insist on a 26(B)(3)(a) order when the Evanses sought to depose Wurth because the partnership believed that the Evanses would seek from Wurth only his proposed testimony, and not any findings or opinions which they might use in their case at trial. This latter use of an opponent's expert, the partnership claims, is very like the use contemplated by TR. 26(B)(3)(a), and so it is within the trial court's discretion to determine at any reasonable time whether and how the deposed expert's fees are to be apportioned between the parties.

## DECISION

### I.

*ISSUE ONE*—Discovery of Experts

When a party deposes his opponent's expert under an informal procedure, without benefit of an order under TR. 26(B)(3)(a), may the opponent seek an order under TR. 26(B)(3)(c) for the deposing party to defray the expert's fees?

*CONCLUSION*—A motion under TR. 26(B)(3)(a) is not a prerequisite to relief under TR. 26(B)(3)(c).

As Frederic William Maitland said many years ago in his Lectures on Equity, equity

---

1. The amount stated in the motion was $2,730.00, but this was eventually corrected.

2. "(c) The court may require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery, and, with respect to discovery permitted under subdivision (B)(3)(a) of this rule, require a party to pay another party a fair portion of the fees and expenses incurred by the latter party in obtaining facts and opinions from the expert."

came "not to destroy the law, but to fulfill it." And so it is with TR. 26(B)(3)(c):

> (c) The court may require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery, and, with respect to discovery permitted under subdivision (B)(3)(a) of this rule, require a party to pay another party a fair portion of the fees and expenses incurred by the latter party in obtaining facts and opinions from the expert.

If parties voluntarily adopt simplified, informal, and nonadversarial methods of discovery, then the Trial Rules should not be read to discourage such informal methods.

In the past, the courts have looked upon the deposition of experts before trial with disfavor. Some courts regarded the opinions of experts before trial as being a kind of work product, and therefore privileged. *State ex rel. Dudek v. Circuit Court of Milwaukee County,* (1967) 34 Wis.2d 559, 150 N.W.2d 387, 35 A.L.R.3d 377. Or, more commonly, it was thought unfair that an expert paid by one party should divulge his expensive knowledge to another free of charge. "To permit a party by deposition to examine an expert of the opposite party before trial, to whom the latter has obligated himself to pay a considerable sum of money, would be equivalent to taking another's property without making any compensation therefor." *Lewis v. United Airline Transport Corporation* (W.D.Penn.1940) 32 F.Supp. 21, 23.

When deposition of an expert was permitted at all in the federal courts, it was at the discretion of the trial court. *Boynton v.*

*R. J. Reynolds Tobacco Company,* (D.Mass. 1941) 36 F.Supp. 593. And generally, the discovery order was subject to a protective order providing for the division of the expert's fees. *Henlopen Hotel Corporation v. Aetna Insurance Company,* (D.Del.1963) 33 F.R.D. 306; *Roe v. Cherry-Burrell Corporation,* (1971) 28 Mich.App. 42, 184 N.W.2d 350. The question of dividing the expert's fees was regarded as one of relieving unfairness, to be resolved in the discretion of the trial court. *Dresser Industries, Inc. v. Doyle,* (N.D.Ill.1966) 40 F.R.D. 478.

It was as a result of the growing consensus that expert witnesses should be discoverable, subject to the equitable protection of the trial courts, that Fed.R.Civ.P. 26(B)(4) and TR. 26(B)(3) were drafted. TR. 26(B)(3)(a) and (b) [3] are designed to provide trial courts with guidance as to when they may *order* the discovery of an expert. TR. 26(B)(3)(b) is directed to the discovery of the expert *as an anticipated witness, see* 2 Harvey, Indiana Practice, Civil Code Study Commission Comments, General Comment on Discovery Rules, p. 463–4; whereas TR. 26(B)(3)(a) governs the discovery of an expert *as an expert, see Harvey, supra,* p. 462.

Consistent with the underlying notion that it is only fair that one who deposes another's expert as an expert should pay a portion of the expert's fees, TR. 26(B)(3)(c) puts it within the discretion of the trial court to apportion the deposed expert's fees between the parties. But the rule remains one of equity; it is phrased in terms of what the court *may* require the deposing

---

**3.** "(3) Trial preparation: Experts.

"(a) Subject to the provisions of subdivision (B)(3)(b) of this rule and Rule 35(B), a party may discover facts known or opinions held by an expert retained or specially employed by another party in anticipation of litigation or preparation for trial only upon a showing of good cause or a showing that the party seeking discovery is unable without undue hardship to obtain facts and opinions on the same subject by other means or upon a showing of other exceptional circumstances indicating that denial of discovery would cause manifest injustice.

"(b) As an alternative or in addition to obtaining discovery under subdivision (B)(3)(a) of

this rule, a party by means of interrogatories may require any other party

(i) to identify each person whom the other party expects to call as an expert witness at trial, and

(ii) to state the subject-matter upon which the expert is expected to testify.

Thereafter, any party may discover from the expert or the other party facts known or opinions held by the expert which are relevant to the stated subject-matter. Discovery of the expert's opinions and the grounds therefor is restricted to those previously given or those to be given on direct examination at trial."

party to do. If we are to be true to the equitable foundation of this rule, we must read it so as not to restrict the power of trial courts to set the parties to rights in circumstances not within the exact letter of the rule.

While there is no Indiana case interpreting this rule since its adoption, the Civil Code Study Commission's comment supports our perspective:

Under subdivision (b)(3)(C), the court is authorized to issue protective orders, including an order that the expert be paid a reasonable fee for time spent in responding to discovery, and that the party whose expert is made subject to discovery be paid a fair portion of the fees and expenses that the party incurred in obtaining information from the expert. The court may issue the latter order as a condition of discovery, or it may delay the order until after discovery is completed. These provisions for fees and expenses meet the objection that it is unfair to permit one side to obtain without cost the benefit of an expert's work for which the other side has paid, often a substantial sum. *E.g., Lewis v. United Air Lines Transp. Corp.*, 32 F.Supp. 21 (W.D.Pa. 1940); *Walsh v. Reynolds Metals Co.*, 15 F.R.D. 376 (D.N.J.1954). On the other hand, a party may not obtain discovery simply by offering to pay fees and expenses. *Cf. Boynton v. R. J. Reynolds Tobacco Co.*, 36 F.Supp. 593 (D.Mass. 1941).

To recapitulate: Courts have long acknowledged that it is unfair that a party should have the benefit of another party's expert without bearing some of the costs. TR. 26(B)(3) was drafted to guide trial courts in alleviating this unfairness, while still permitting the broadest possible discovery. As a codification of an equitable rule, couched in permissive terms, TR. 26(B)(3)(c) is to be read in the light of "the inherent power of the trial court to do those things which are necessary to move the proceedings along to judgment." *Finley v. Finley*, (1977) Ind.App., 367 N.E.2d 1126, 1127; TR. 1. Further, the command of TR.

1 that the rules "shall be construed to secure the just, speedy and inexpensive determination of every action" suggests that courts foster informal discovery procedures whenever those informal procedures promote justice, speed, and efficiency. The parties should not be denied the protections of the trial rules merely because they had not previously chosen to burden the courts with matters on which they were disposed to cooperate.

Armed with these considerations we turn to this case. So far as we can tell, all the parties conducted their pretrial business amicably, relying on their mutual good faith. Depositions were arranged through correspondence between attorneys, addressed on a first name basis. When one of the Evanses' experts, a Mr. Walters, was deposed, counsel for the Evanses notified all opposing counsel of Walters' expenses in responding to the deposition, which all parties willingly paid.

Wurth was deposed at the Evanses' request, and with the partnership's cooperation. No order was filed, because no order had to be filed: whether Wurth should be deposed at all was never at issue. After Wurth was deposed, counsel for the partnership informed counsel for the Evanses that Wurth's bill was in the amount of $410.00 for time spent in responding to the deposition, and $2,380.00 for the information, computations, and drawings which he supplied to the Evanses. The partnership paid the expert's fees, and when full reimbursement was not forthcoming from the Evanses, the partnership filed its motion under TR. 26(B)(3)(c). The court, having withheld its ruling until after it had heard the trial as a whole, determined that the Evanses had used the partnership expert as their own, and ordered the Evanses to pay the full $2,790.00.

■ On the basis of these facts, we cannot say that the trial court has done anything less than its duty. The trial court had before it a situation which many other courts have criticized as unfair: the use by one party of another's expert witness. The court was empowered by TR. 26(B)(3)(c) to correct just such a situation, and it did so.

The Evanses suggest that because TR. 26(B)(3)(c) is drafted in terms of what the court may require of a "party seeking discovery," the use of the present tense makes the remedy unavailable to parties who have already obtained discovery. But the comments of the Civil Code Study Commission expressly contradict that suggestion, saying instead that "the court . . . may delay the order [for the payment of fees] until after discovery is completed." 2 *Harvey, supra,* p. 463. To construe the rule otherwise would place a useless restriction on the power of a trial court to supervise proceedings before it.

Thus we conclude that it was proper for the trial court to grant relief under TR. 26(B)(3)(c), regardless of whether an order had previously been granted under TR. 26(B)(3)(a).

## II.

*ISSUE TWO*—Amount of Award

Was the evidence sufficient to support the trial court's award of $2,790.00 to the partnership?

*CONCLUSION*—Because we find no abuse of discretion, we cannot conclude that the award of $2,790.00 by the trial court·was excessive.

was excessive.

"A trial court exercises judicial discretion in ruling on discovery issues and this Court will interfere only if the trial court has abused its discretion. *Costanzi v. Ryan,* (1978) Ind.App., 370 N.E.2d 1333." *Geib v. Estate of Geib* (1979) Ind.App., 395 N.E.2d 336. While the evidence before the trial court as to Wurth's fees was admittedly

meager, we do not think it so meager as to make an award of fees an abuse of discretion.

In considering the partnership's motion, the trial court had before it copies of Wurth's bills to the partnership in the amounts of $2,380.00, and $410.00, along with the affidavit of counsel for the partnership that these expenses were incurred in responding to the Evanses' request for a deposition. And further, the trial court did not rule upon the motion until after the trial when it was clear that the *only* parties who derived any benefit from Wurth's efforts were the Evanses. The court's order under Rule 26 explicitly said that the deposition was "used by plaintiffs at trial in their case-in chief [sic] . . ."[4]

■ Under these circumstances there was no abuse of discretion by the trial court in requiring the Evanses to pay the expert, Wurth. They called the tune and must pay the fiddler.

The order of the trial court is affirmed.

SULLIVAN and MILLER (participating by designation), JJ., concur.

---

4. We make reference to the order of the trial court, rather than to the transcript of the trial because that transcript was not included in the record prepared by the Evanses. In general, the submission of partial records is favored when only a portion of the record is germane to the issues on appeal. Appellate Rule 7.2(B). The parties are, however, at risk if they use this option carelessly. Appellants are expected to present this court with a record that is a full and fair account of the facts relevant to the issues they raise.

Appellate Rule 7.2(B) does put it within the power of the appellee to bring additional portions of the record before this court, should he be dissatisfied with the portion submitted by the appellant. Thus, when we say that the Evanses used Wurth's deposition in their case-in-chief, we do so not on the basis of the partnership's repeated assertions that this happened, but on the basis of the trial court's so stating in its order.